NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BAPTIST HOSPITAL, INC., Respondent.

No. 76–1675.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1978.

Decided May 10, 1978.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., William R. Stewart, Washington, D. C., Raymond A. Jacobson, Director, Region 26, N. L. R. B., Memphis, Tenn., for petitioner.

Joseph H. Clark, David Vaughan, Elarbee, Clark & Paul, Atlanta, Ga., for respondent.

William F. Ford, Michael H. Campbell, Fisher & Phillips, Atlanta, Ga., for amicus curiae Hospital Corp.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This case concerns the validity of a "no-solicitation rule" in a hospital setting. Following a hearing an administrative law judge concluded that the rule is invalid on its face to the extent that it prohibits solicitations at any time in all areas of the hospital which are accessible to, or utilized by the public. He also held that no unusual circumstances had been established which would justify the otherwise invalid restrictions contained in the rule. The National Labor Relations Board (the Board) considered exceptions filed by Baptist Hospital, Inc. (the hospital) and agreed with the conclusion of the administrative law judge that promulgation and enforcement of the no-solicitation rule constituted a violation of provisions of the National Labor-Management Relations Act of 1947, as amended, 29 U.S.C. §§ 141, *et seq.* (the Act). The Board's decision and order are reported at 223 NLRB No. 34 (1976).

Baptist Hospital, located in Nashville, Tennessee, is a non-profit general hospital with 600 beds and more than 1800 employees. For some years prior to 1974 the hospital had enforced a rule against solicitations which applied to the entire hospital premises. In August 1974 a union began attempts to organize employees of the hospital. Also, during that month the Act was amended to give the Board jurisdiction over nonprofit health care institutions.

■ W. T. Victory, vice president of personnel services for the hospital, testified that the no-solicitation rule was revised with the advice of counsel. The present rule, effective since October 4, 1974, reads as follows:

No solicitations of any kind, including solicitations for memberships or subscriptions, will be permitted by employees at any time, including work time and non-work time in any area of the Hospital which is accessible to or utilized by the public. Anyone who does so will be subject to disciplinary action. In those work areas of the Hospital not accessible to or utilized by the public, no solicitation of any kind, including solicitations for memberships or subscriptions will be permitted at any time by employees who are supposed to be working, or in such a way as to interfere with the work of other employees who are supposed to be working. Anyone who does so and thereby neglects his work or interferes with the work of others will likewise be subject to disciplinary action.

No distributions of any kind, including circulars or other printed materials, shall be permitted in any work area at any time.

In publishing the revised rule the hospital explained its purpose in an employee's handbook as being "to help protect the privacy and rights of employees as well as to help maintain a good working environment and appearance throughout the hospital."

The same witness testified that, as applied by the hospital, the rule prohibits all soliciting and the distribution of literature by employees in any area open to the public or any area where work is performed. Included in the areas closed to solicitation are a gift shop and cafeteria which are open to employees, visitors to the hospital, and with some exceptions, to patients. Solicitation and distribution are permitted, however, in several employees' lounges which contain vending machines, 28 utility rooms, 26 nurses' stations and those rest rooms which are restricted to employees. There was uncontradicted testimony that employees have openly solicited for a union in some of these areas without interference. Vice-president Victory also testified that there was no change in application of the hospital's long-standing rule against solicitations after October 4, 1974; that the revisions were made in order to be in compliance with the law. He conceded that union activity was "involved" in adoption of the revised rule.

The witness Victory related that when the union commenced its activities some employees were stopped for discussion of the pros and cons of organizing and this caused a disruption of the work force at various places throughout the hospital. The revised rule was required, the witness stated, to prevent disruption of patient care. It would not be in the best interest of the patients to change the rule, in the opinion of Victory, who stated that this was also the consensus of doctors with whom he had discussed the possibility of changing the rule.

Two members of the medical staff of the hospital testified. Both were experienced physicians engaged in private practice. Dr. Russell T. Birmingham testified that it was important to shield patients from emotional problems because the attitude of a patient and the patient's family have "a great deal to do with the recovery" of the patient. The witness stated that the need to maintain a tranquil atmosphere is not limited to treatment areas, since patients are permitted to move around in all areas of the hospital. If union activity should become "volatile or hostile in any form" it was Dr. Birmingham's opinion that such activity would have a potential for affecting patients and their families adversely.

Dr. Greer Ricketson testified that any "nonprofessional attitude" among hospital employees is upsetting to patients. He stated that patients and their families are disturbed when people who are supposed to be taking care of them seem to have their minds on other things. This witness, who was chief of the medical staff of the hospital at the time of the hearing, stated emphatically that the rule and the reasons for the rule apply equally to all solicitations. Explaining the need for a rule which covers the entire working and public-access areas of the hospital, Dr. Ricketson referred to the present-day mobility of patients and the fact that an event which disturbs the visiting family invariably gets back to the patient.

No evidence was introduced which contradicted in any way the testimony of the two doctors that important medical reasons exist for maintaining the no-solicitation rule of the hospital. The administrative law judge summarized their testimony and found nothing "new or unusual" in it. He concluded that the hospital had failed to establish the existence of unusual circumstances at Baptist Hospital sufficient to warrant approval of a rule which prohibits solicitation in nonworking areas on nonworking time. The Board agreed with this conclusion without discussion, merely holding:

> By promulgating and maintaining a no-solicitation rule which prohibits employees from soliciting for the Union during their nonwork time in areas of the hospital other than immediate patient care areas, respondent has violated Section 8(a)(1) of the Act.[1]

Both the decision of the Board and that of the administrative law judge are weakened by their reliance on previous Board orders which have been denied enforcement upon judicial review. The administrative law judge relied almost exclusively on *Summit Nursing Home, Inc.*, 196 NLRB No. 110 (1972), in holding the no-solicitation rule in the present case invalid. This court denied enforcement of the Board's order in its entirety in *N. L. R. B. v. Summit Nursing Convalescent Home*, 472 F.2d 1380 (1973). In affirming the decision of the administrative law judge in the present case the Board based its holding squarely on its decision in *St. John's Hospital & School of Nursing*, 222 NLRB No. 182 (1976). The portion of the decision and order thus relied upon was denied enforcement by the court of appeals. *St. John's Hospital and School of Nursing, Inc. v. N. L. R. B.*, 557 F.2d 1368 (10th Cir. 1977).

In ordering that the ban against solicitation by non-working employees in the present case be limited to areas of "immediate patient care" the Board in effect held that the hospital had proven "special circumstances" only in relation to those areas. The proof is otherwise. Three witnesses emphasized the fact that many patients, though hospitalized for serious illnesses, are permitted to move freely through public areas of the hospital. Ambulatory patients are permitted to visit with their families and friends in the lobbies and public lounges. They are free to visit the gift shop and, with a doctor's permission, to eat in the public cafeteria. These witnesses, two physicians and an experienced hospital administrator, repeatedly referred to the necessity of creating and maintaining a

---

1. Section 8(a)(1), codified as 29 U.S.C. § 158(a)(1), reads:

   § 158. Unfair labor practices
   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

   Section 157, referred to above, the codification of section 7 of the Act, provides:
   § 157. Right of employees as to organization, collective bargaining, etc.

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

tranquil atmosphere throughout the hospital for patients and visitors. The testimony of the medical witnesses related this requirement directly to the well-being of the patients. The witnesses made no distinction between areas of immediate patient care and other areas of the hospital. Dr. Ricketson stated that patient care is the only purpose of the hospital, and anything which interferes with patient care should be forbidden.

Recent Board orders limiting a hospital's right to ban solicitation and distribution to "immediate patient care areas" have been enforced. See *Lutheran Hospital of Milwaukee, Inc. v. N. L. R. B.*, 564 F.2d 208 (7th Cir. 1977); *N. L. R. B. v. Beth Israel Hospital*, 554 F.2d 477 (1st Cir. 1977), *cert. granted*, 434 U.S. 1033, 98 S.Ct. 764, 54 L.Ed.2d 780 (1978). We are urged to follow those decisions, but decline to do so. In the setting of a modern general hospital it is difficult to define the areas of immediate patient care. One of the medical witnesses in the present case referred to the importance of the "psychological attitudes" of patients. A patient's attitude toward the hospital and the likelihood of receiving expert care while there depends in part on whether he perceives the staff as concerned exclusively with patient care. This need for professionalism was not limited by the witness to doctors and nurses, but was set forth as a requirement for all employees. Both physician witnesses testified that any activity within the hospital involving volatile or hostile discussion of any subject, whether observed by patients or related to them by visiting family or friends, would be detrimental to their well-being. There is no evidence in this case to justify an "immediate patient care" area limitation on the no-solicitation rule.

We are persuaded that the reasoning of the courts in *St. John's Hospital, supra*, and *Baylor University Medical Center v. N. L. R. B.*, 578 F.2d 351 (D.C.Cir. 1978), is correct. In *St. John's* the no-solicitation rule was enforced in all areas of the hospital, including a cafeteria and gift shops to which patients had access. The court there concluded that the Board had failed to give

sufficient weight to the special needs of hospital patients and that the Board's balancing of the interests involved was unreasonable. Congressional concern for the special circumstances of hospitals as shown by the legislative history of the 1974 amendments to the Act was noted in both the *St. John's* and *Baylor University* opinions. Both courts related this concern to the necessity of avoiding disruptions in the continuity of patient care. The D.C. Circuit specifically found that this concern was not limited to prevention of disruptions which would be caused by strikes and picketing.

The Board urges, apart from application of the present rule to lobbies, corridors and visitors' lounges, that no ban on solicitation or distribution in the public cafeteria and gift shop is permissible. It is argued that these locations are not involved in the "main function" of the hospital and should be available to nonworking employees for organizational activities. The Board asserts that the commercial and financial justifications which have led it to uphold prohibitions on solicitations in restaurants and retail stores do not apply to a hospital setting. See, *e. g., Marshall Field & Co. v. N. L. R. B.*, 200 F.2d 375 (7th Cir. 1952, *amended* 1953); *N. L. R. B. v. May Department Store, Inc.*, 154 F.2d 533 (8th Cir.), *cert. denied*, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946); *McDonald's of Palolo*, 205 NLRB No. 78 (1973). This same argument was made by the Board and rejected by the court in *St. John's* and by a majority of the panel in *Baylor University, supra*. The Board's position was adopted in *N. L. R. B. v. Beth Israel Hospital, supra*. There the court held that the hospital failed to sustain its burden of showing that special circumstances justified a ban on solicitations in a cafeteria and coffee shop. However, we conclude that the hospital did carry its burden in the present case. Here the record contains uncontradicted testimony that these areas are part of the total environment of the hospital where the medical needs of patients are served by maintaining a climate free of strife and controversy. We decline to follow *Beth Israel*.

As has been pointed out Baptist Hospital has a large number of areas which are closed to patients and the public where the no-solicitation rule does not apply. This fact alone would not validate an otherwise unlawful no-solicitation rule. However, since we conclude that the hospital did carry its burden of establishing special circumstances, the existence of numerous locations which are open to solicitation further convinces us that the hospital's rule does not deny its employees those rights secured to them by section 7 of the Act.

Both medical witnesses stated that person-to-person solicitation and distribution of literature in the parking lot should have no detrimental effect on patients within the hospital. Vice-president Victory agreed that solicitation and distribution in the parking lot would not be objectionable so long as the premises were not littered and solicitation did not "create a nuisance." Other rules not in issue here provide the means for preventing noisy mass meetings and littering of the premises. Accordingly, in denying enforcement of the Board's order we construe the hospital's no-solicitation, no-distribution rule to apply only to areas within the various buildings occupied by the hospital and those exterior areas immediately adjacent to entrances used by patients and the public.

The administrative law judge made findings that the hospital had discriminated against one employee for his union activities. Most of his activities were prohibited by the rule which we have found to be valid. However, there is some evidence to support inferences of discrimination against this employee for protected activities unrelated to the no-solicitation rule. Nevertheless, the broad language of the Board's order with respect to "interfering with, restraining or coercing its employees in the exercise of their rights" to be represented by a union is not justified. Enforcement of the order of the Board is denied in its entirety except insofar as it relates to Clyde Russell French, an employee. The order relating to French is incapable of enforcement without modification.

The court was advised at oral argument that Clyde Russell French has died, abating that portion of the order which directs the hospital to offer him employment. The "make whole" provisions of the order appear to rest largely upon the determination of the administrative law judge and the Board that the hospital's no-solicitation rule is invalid. To the extent that these provisions rest on that assumption, they will not be enforced. We remand to the Board for a specification of what remedial provisions, if any, of its previous order are unrelated to the hospital's no-solicitation rule.