NATIONAL LABOR RELATIONS BOARD ET AL. *v.*
BAPTIST HOSPITAL, INC.

No. 78–223.  Argued April 23, 1979—Decided June 20, 1979

POWELL, J., delivered the opinion of the Court, in which STEWART, BLACKMUN, REHNQUIST, and STEVENS, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 791. BURGER, C. J., filed an opinion concurring in the judgment, *post*, p. 791. BRENNAN, J., filed an opinion concurring in the judgment, in which WHITE and MARSHALL, JJ., joined, *post*, p. 793.

*Norton J. Come* argued the cause for petitioner National Labor Relations Board. With him on the brief were *Solicitor General McCree, John S. Irving, Linda Sher,* and *David F. Zorensky. Laurence Gold* argued the cause for intervenor Local 150–T Service Employees International Union. With him on the briefs were *Lester Asher, J. Albert Woll,* and *George Kaufmann.*

*Fred W. Elarbee* argued the cause for respondent. With him on the brief was *David M. Vaughan.**

Mr. Justice Powell delivered the opinion of the Court.

This case presents the question of the validity of an order of the National Labor Relations Board (Board) prohibiting respondent, Baptist Hospital (Hospital), from enforcing any rule against solicitation by employees "on behalf of any labor organization during their nonworking time in any area of its hospital other than immediate patient care areas."

I

The Hospital is a nonprofit general hospital with 600 beds and 1,800 employees. For several years prior to 1974, the Hospital enforced a rule against solicitation anywhere on its premises.[1] The intervenor, Local 150–T, Service Employees International Union, AFL–CIO (Union), in August 1974 began a campaign to organize the Hospital's employees. The Hospital, at least partly in response to this organizational activity, promulgated a new rule prohibiting solicitation by employees at all times "in any area of the Hospital which is accessible to or utilized by the public." These areas include the lobbies, gift shop, cafeteria, and entrances on the first

---

*\*Richard Dorn* filed a brief for the National Union of Hospital and Health Care Employees as *amicus curiae* urging reversal.

*William Francis Ford* and *Samuel Dunbar Hewlett* filed a brief for the Hospital Corporation of America as *amicus curiae*.

[1] The rule read:

"In order to protect employees from any form of solicitation, raffle, charity drives, etc., it is strictly prohibited for anyone to solicit patients or visitors while on hospital premises without written approval from Administration. Violation of this policy will subject employee to disciplinary action. Employees who discover persons making unauthorized solicitation should report this immediately to their Supervisor."

This rule was adopted primarily to keep salesmen out of the Hospital. *Baptist Hospital, Inc.*, 223 N. L. R. B. 344, 348, 357 (1976), enf. granted in part and denied in part, 576 F. 2d 107 (CA6 1978).

floor of the hospital as well as the corridors, sitting rooms, and public restrooms on the other floors. In parts of the Hospital not open to patients and their visitors, employee solicitation is allowed in work areas on nonwork time, and distributions are allowed in nonwork areas on nonwork time.[2]

The Union filed charges with the Board, which thereupon issued a complaint against the Hospital. The complaint focused primarily on the Hospital's no-solicitation rule, charging that the broad proscriptions contained in the rule violated § 8 (a)(1) of the National Labor Relations Act (Act), as amended, 29 U. S. C. § 158 (a)(1).[3] After hearing testi-

---

[2] The new rule governing solicitation in the Hospital provides:

"No solicitations of any kind, including solicitations for memberships or subscriptions, will be permitted by employees at any time, including work time and non-work time in any area of the Hospital which is accessible to or utilized by the public. Anyone who does so will be subject to disciplinary action. In those work areas of the Hospital not accessible to or utilized by the public, no solicitations of any kind, including solicitations for memberships or subscriptions will be permitted at any time by employees who are supposed to be working, or in such a way as to interfere with the work of other employees who are supposed to be working. Anyone who does so and thereby neglects his work or interferes with the work of others will likewise be subject to disciplinary action.

"No distributions of any kind, including circulars or other printed materials, shall be permitted in any work area at any time."

All of the parties agree that the restrictions on solicitation and distribution imposed with respect to areas of the Hospital not accessible to patients and the public are in conformity with existing law.

[3] Section 8 (a)(1), as set forth in 29 U. S. C. § 158 (a)(1), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights [of self-organization and collective bargaining] guaranteed in section 157 of [Title 29]."

The complaint also charged that the Hospital had violated § 8 (a)(3) of the Act, 29 U. S. C. § 158 (a)(3), by discriminating against an employee, Russell French, on account of his union organizational activities. The Board sustained this charge, ordering the Hospital to reinstate French and pay him any wages lost because of such discrimination. French died before the decision of the case in the Court of Appeals, leaving only the issue of backpay. The Court of Appeals, after concluding that the Hospital's

monial evidence introduced by both the Hospital and the General Counsel for the Board, the Administrative Law Judge concluded that the Hospital's no-solicitation rule was invalid. *Baptist Hospital, Inc.,* 223 N. L. R. B. 344, 347 (1976). The Board agreed, and issued an order that the Hospital cease and desist from "[p]romulgating, maintaining in effect, enforcing, or applying any rule or regulation prohibiting its employees from soliciting on behalf of any labor organization during their nonworking time in any area of its hospital other than immediate patient care areas." *Id.,* at 346.[4]

The Board sought enforcement of its order by the Court of Appeals. After reviewing the evidence of record before the Board, the court concluded that the Hospital had presented evidence of the ill effects of solicitation on patient care that justified the broad prohibition of solicitation.[5] The court accordingly denied enforcement of the Board's order. 576 F. 2d 107 (CA6 1978). We granted the Board's petition for certiorari, 439 U. S. 1065 (1979), and now affirm in part and vacate and remand in part.

---

no-solicitation rule did not violate § 8 (a) (1), remanded to the Board for a determination of what portions of the backpay previously ordered were unrelated to the Hospital's no-solicitation rule. 576 F. 2d, at 111. Neither the Board nor the Hospital has questioned this disposition of the § 8 (a) (3) claim.

[4] Section 1 (a) of the Board's order; see 223 N. L. R. B., at 346. In § 2 (b) of its order, the Board also directed the Hospital to rescind its existing no-solicitation rule "to the extent that it prohibits its employees from soliciting on behalf of a labor organization during their nonworking time in any nonworking area of the Hospital including those areas open to the public." 223 N. L. R. B., at 346, 361.

[5] The court also noted that the proscription of solicitation and distribution did not extend to the Hospital's parking lots. "[I]n denying enforcement of the Board's order we construe the hospital's . . . rule to apply only to areas within the various buildings occupied by the hospital and those exterior areas immediately adjacent to entrances used by patients and the public." 576 F. 2d, at 111. This conclusion comports with the testimony given at the administrative hearing on the Board's complaint. App. 34, 45, 63.

## II

The Board, in implementing the 1974 extension of the Act to nonprofit health-care institutions,[6] has modified its general rule regarding the validity of employer regulations of solicitation. Because its usual presumption that rules against solicitation on nonwork time are invalid [7] gives too little weight to the need to avoid disruption of patient care and disturbance of patients in the hospital setting, the Board has indicated that it will not regard as presumptively invalid proscriptions on solicitation in immediate patient-care areas.[8] In *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483 (1978), the Court considered the general acceptability of the use of this presumption by the Board.

At issue in *Beth Israel Hospital* was that hospital's rule against solicitation in its cafeteria and coffeeshop. The Court, in the course of affirming a decision of the Board that struck down the no-solicitation rule, described the Board's general approach to such rules.

"The Board concluded that prohibiting solicitation in

---

[6] Act of July 26, 1974, 88 Stat. 395; see *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483, 485, and n. 1 (1978).

[7] *Republic Aviation Corp.* v. *NLRB,* 324 U. S. 793, 803–804, and n. 10 (1945).

[8] The Board first announced this modification of the presumption in *St. John's Hospital & School of Nursing, Inc.,* 222 N. L. R. B. 1150 (1976), enf. granted in part and denied in part, 557 F. 2d 1368 (CA10 1977). The Board has applied its modified presumption in a number of subsequent cases involving union organizational activities in hospitals, including, in addition to the present case, *Beth Israel Hospital,* 223 N. L. R. B. 1193 (1976), enf'd, 554 F. 2d 477 (CA1 1977), aff'd, 437 U. S. 483 (1978); *Lutheran Hospital of Milwaukee,* 224 N. L. R. B. 176 (1976), enf. granted in part and denied in part, 564 F. 2d 208 (CA7 1977), vacated and remanded, 438 U. S. 902 (1978); *Baylor University Medical Center,* 225 N. L. R. B. 771 (1976), enf. granted in part and denied in part, 188 U. S. App. D. C. 109, 578 F. 2d 351, vacated in part and remanded, 439 U. S. 9 (1978); *St. Joseph Hospital,* 228 N. L. R. B. 158 (1977).

[immediate patient-care areas] was justified and required striking the balance against employees' interests in organizational activity. The Board determined, however, that the balance should be struck against the prohibition in areas other than immediate patient-care areas such as lounges and cafeterias absent a showing that disruption to patient care would necessarily result if solicitation and distribution were permitted in those areas." *Id.,* at 495.

The Court found no merit in Beth Israel's argument that the Board's use of such a presumption was inconsistent with the legislative intent underlying extension of the Act to nonprofit health-care institutions. The Congress has committed to the Board the task of striking the appropriate balance among the interests of hospital employees, patients, and employers, a role familiar to the Board in other contexts. *Beth Israel Hospital* v. *NLRB, supra,* at 496–497, 500–501; *Hudgens* v. *NLRB,* 424 U. S. 507, 521–523 (1976). And the balance struck by the Board—solicitation on nonwork time may be prohibited only where necessary to avoid disruption of patient care or disturbance of patients—is not inconsistent with the Act. *Beth Israel Hospital* v. *NLRB, supra,* at 497–500. Accordingly, the Court held "that the Board's general approach of requiring health-care facilities to permit employee solicitation and distribution during nonworking time in nonworking areas, where the facility has not justified the prohibitions as necessary to avoid disruption of health-care operations or disturbance of patients, is consistent with the Act." 437 U. S., at 507.

The scope of the Board's presumption depends upon the definition of the phrase "immediate patient-care areas." The Court had no occasion in *Beth Israel* to determine or review the limits of the Board's definition. The attack on the no-solicitation rule at issue there focused entirely on the prohibition of solicitation in the cafeteria and coffeeshop, and the Board's order was limited to a requirement that the hospital

"[r]escind its written rule prohibiting distribution of union literature and union solicitation in its *cafeteria and coffee-shop.*" *Beth Israel Hospital,* 223 N. L. R. B. 1193, 1199 (1976) (emphasis added); see *NLRB* v. *Beth Israel Hospital,* 554 F. 2d 477, 482 (CA1 1977), aff'd, 437 U. S. 483 (1978). The Board's definition of "immediate patient-care areas" is essential, however, to an understanding of both the operation of the presumption and the Board's final order in the present case. The Hospital's rule prohibits solicitation in all areas of the Hospital open to patients or visitors, and the complaint charged that the Hospital had violated § 8 (a)(1) by maintaining an overly broad rule against solicitation. 223 N. L. R. B., at 347, 355. The Board's order covers all areas of the Hospital, and explicitly limits application of a no-solicitation rule to areas of "immediate patient care." [9]

Neither the Board nor the Administrative Law Judge mentioned in their respective opinions the exact scope that they assigned to the term "immediate patient-care areas." But, as the Court of Appeals remarked, 576 F. 2d, at 109, the Board based its ruling on the analysis it had adopted in *St. John's Hospital & School of Nursing, Inc.,* 222 N. L. R. B. 1150 (1976), enf. granted in part and denied in part, 557 F. 2d 1368 (CA10 1977). See 223 N. L. R. B., at 344 n. 2. In *St. John's Hospital,* the Board stated that immediate patient-care areas are areas "such as the patients' rooms, operating rooms, and places where patients receive treatment, such as x-ray and therapy areas." 222 N. L. R. B., at 1150. Thus, it appears that in the present case the Board assumed the validity of prohibitions on solicitation only in these limited areas, treating any broader ban as presumptively invalid.

---

[9] The order recommended by the ALJ was phrased in terms of "nonworking areas" (Hospital forbidden to interfere with solicitation on nonworking time in "nonworking areas"), but the Board substituted an order prohibiting interference with solicitation on nonwork time in areas other than those for "immediate patient care." 223 N. L. R. B., at 346, 361.

And given this definition of patient-care areas, the Board's order prevents the Hospital from applying a no-solicitation rule not only to its lobbies, cafeteria, and gift shop but also to the corridors and sitting rooms that adjoin or are accessible to patients' rooms and operating and treatment rooms.[10]

## III

The Board's presumption, of course, does no more than place on the Hospital the burden of proving, with respect to areas to which it applies, that union solicitation may adversely affect patients. Accordingly, in *Beth Israel* the Court described the Board's presumption as a ban on the prohibition of solicitation in areas other than immediate patient-care areas "where the facility has not justified the prohibitions as necessary to avoid disruption of health-care operations or disturbance of patients." 437 U. S., at 507; accord, *id.*, at 495.[11] The hospital in *Beth Israel* failed to introduce any evidence that the proscription of solicitation in its cafeteria and coffee-shop was necessary to prevent either disruption of patient care or disturbance of patients. The Court found that "patient

---

[10] Although the Board has never published a more definite list of "immediate patient-care areas" than the one included in *St. John's Hospital & School of Nursing, Inc.*, nothing in its subsequent opinions has suggested that the Board views areas other than patients' rooms, operating rooms, and treatment rooms as areas of immediate patient care. In *Baylor University Medical Center* v. *NLRB*, 188 U. S. App. D. C., at 110–111, 578 F. 2d, at 352–353, for example, the corridors of the hospital as well as its cafeteria were excluded by the Board from "immediate patient-care areas."

[11] The Court's restatement of the Board's presumption makes it clear that a hospital may overcome the presumption by showing that solicitation is likely either to disrupt patient care *or* disturb patients. The distinction is an important one. Solicitation may disrupt patient care if it interferes with the health-care activities of doctors, nurses, and staff, even though not conducted in the presence of patients. And solicitation that does not impede the efforts of those charged with the responsibility of caring for patients nonetheless may disturb patients exposed to it.

use of the cafeteria [was] voluntary, random, and infrequent," and considered it of "critical significance that only 1.56% of the cafeteria's patrons are patients." *Id.*, at 502; see also *id.*, at 508–509 (BLACKMUN, J., concurring in judgment); *id.*, at 516–517 (POWELL, J., concurring in judgment).

In the present case, in contrast, extensive evidence was offered, through the testimony of doctors and a hospital administrator, in justification of the no-solicitation rule. The Board, after applying its presumption to the evidence before it, concluded that the Hospital had failed to meet the burden placed upon it by the presumption. In doing so, the Board made a finding of fact that there was no demonstrated likelihood that solicitation outside of "immediate patient-care areas" would disrupt patient care or disturb patients. 223 N. L. R. B., at 357; 576 F. 2d, at 109.

Such findings are binding on the reviewing courts, but only if they are supported by "substantial evidence on the record considered as a whole." Act, § 10 (e), 29 U. S. C. § 160 (e). When the Board's findings lack such support in the record, the reviewing courts must set them aside, along with the orders of the Board that rest on those findings. Administrative Procedure Act, 5 U. S. C. § 706 (2)(E); *Universal Camera Corp.* v. *NLRB,* 340 U. S. 474, 490 (1951). The Court of Appeals, exercising its reviewing function, determined that the Board's findings were contrary to the proof of record, which in its view provided adequate support for the application of the no-solicitation rule in all areas of the Hospital. We think that the correct position lies between those taken by the Board and the court below. While the Board's holding with respect to some of the areas in dispute has substantial evidentiary support in the record, the Court of Appeals was justified in concluding that the Board lacked such support for its sweeping protection of solicitation in all but "immediate patient-care areas."

The Hospital's Vice President for Personnel Services, Vic-

tory, testified that the no-solicitation rule was adopted because of concern about the ill effects of union organizational activity on patients. App. 5–6, 31. The general purpose of the rule, he indicated, is to protect the patients and their families from the disquiet that might result if they perceived that the Hospital's staff had concerns other than the care of patients. *Id.*, at 12, 13. The rule rests, in Victory's words, on the Hospital's experience: "we have found that anytime we do anything that lets a patient or their [*sic*] family see that we have our mind on anything but patient care, this is very disruptive to the patient and sometimes affects the patient's ability to recover." *Id.*, at 12. The Hospital's Chief of Medical Staff, Ricketson, echoed this rationale for proscription of solicitation in any area of the Hospital open to patients or their visitors, emphasizing that the "psychological attitudes [of patients] play a good part," *id.*, at 57, in determining the success of their treatment. See *id.*, at 53, 57–58, 62. Another doctor, Birmingham, testified that because "[p]eople who are physically ill are more emotionally upset," it is essential to create within the Hospital the tranquillity that is most conducive to their recovery. *Id.*, at 43–44. The Court of Appeals laid great stress on this aspect of the evidence before the Board, stating that "[t]hese witnesses, two physicians and an experienced hospital administrator, repeatedly referred to the necessity of creating and maintaining a tranquil atmosphere throughout the hospital for patients and visitors. The testimony of the medical witnesses related this requirement directly to the well-being of the patients. The witnesses made no distinction between areas of immediate patient care and other areas of the hospital." 576 F. 2d, at 109–110.[12]

---

[12] MR. JUSTICE BLACKMUN has commented perceptively on the importance of maintaining a peaceful and relaxed atmosphere within hospitals. "Hospitals, after all, are not factories or mines or assembly plants. They are hospitals, where human ailments are treated, where patients and relatives alike often are under emotional strain and worry, where pleasing

The evidence concerning the corridors and sitting rooms adjoining or accessible to the patients' rooms and treatment rooms on the upper floors of the Hospital provided more detailed illustration of the need for a no-solicitation rule applicable to those areas. Patients in the most critical and fragile conditions often move or are moved through these corridors, either en route to treatment in some other part of the Hospital or as part of their convalescence. App. 10, 24, 54, 64.[13] The increased emphasis in modern hospitals on the mobility of patients as an important aspect of patient therapy is well known, and appears to be a part of patient care at the Hospital. *Id.*, at 40–41, 54. Small public rooms or sitting areas on the patient-care floors, as well as the corridors themselves, provide places for patients to visit with family and friends, as well as for doctors to confer with patients' families—often during times of crisis. *Id.*, at 24, 40, 55–56. Nothing in the evidence before the Board provided any basis, with respect to those areas of the Hospital, for doubting the accuracy of the statements made by Ricketson and Birmingham that union solicitation in the presence or within the hearing of patients may have adverse effects on their recovery. *Id.*, at 23, 39–40, 57–58, 62.

The Hospital also presented uncontradicted evidence that solicitation on nonwork time is allowed in other areas even under the no-solicitation rule at issue here. These areas in-

---

and comforting patients are principal facets of the day's activity, and where the patient and his family—irrespective of whether that patient and that family are labor or management oriented—need a restful, uncluttered, relaxing, and helpful atmosphere, rather than one remindful of the tensions of the marketplace in addition to the tensions of the sick bed." *Beth Israel Hospital* v. *NLRB,* 437 U. S., at 509 (concurring in judgment).

[13] Although the elevators and stairways in every hospital also are used by patients moving and being moved to and from various treatment areas, the Hospital presented no specific evidence regarding these areas, and the Board made no specific finding as to them.

clude the 26 nurses' stations [14] and adjoining utility rooms located throughout the Hospital, two employee lounges, and the maintenance and laundry buildings. *Id.*, at 8, 16, 25–26. Especially in view of our ruling upholding the Board's position on the first-floor lobbies, gift shop, and cafeteria, the availability of these alternative locations for solicitation, though not dispositive, lends support to the validity of the Hospital's ban on such activity in other areas of the Hospital. As the Court remarked in *Beth Israel:*

> "[I]n the context of health-care facilities, the importance of the employer's interest in protecting patients from disturbance cannot be gainsaid. While outside of the health-care context, the availability of alternative means of communication is not, with respect to employee organizational activity, a necessary inquiry . . . , it may be that the importance of the employer's interest here demands use of a more finely calibrated scale. For example, the availability of one part of a health-care facility for organizational activity might be regarded as a factor required to be considered in evaluating the permissibility of restrictions in other areas of the same facility." 437 U. S., at 505.

We conclude that, with respect to the corridors and sitting rooms on patients' floors, the Court of Appeals correctly determined that there was no substantial evidence of record to sup-

---

[14] The Hospital exempts nurses' stations from the ban on solicitation in areas that are accessible to patients and visitors, but does subject them to the prohibition against solicitation in work areas on working time. App. 18–19, 25. The Hospital's acceptance of solicitation in nurses' stations during employees' nonworking time appears to rest on the partition of these stations from surrounding areas open to patients, and on the use of the stations by employees on breaks from work. *Id.*, at 25–26. It may well be that in other hospitals, solicitation in these critical areas would threaten to disturb patients or disrupt patient care, since there are always some employees on duty there.

port the Board's holding that the Hospital had failed to justify its ban on solicitation in these areas.

The same may not be said, however, of the cafeteria, gift shop, and lobbies on the first floor of the Hospital. No evidence directly contradicting the professional judgments of Victory, Birmingham, and Ricketson as to the importance of a tranquil hospital atmosphere to successful patient care was presented to the Board. But when viewed as a whole, the evidence presented by the Hospital may be regarded fairly as insufficient to rebut the Board's presumption that the needs of essential patient care do not require the banning of all solicitation in such areas.[15] The Hospital presented no clear evidence of the frequency with which patients use the cafeteria and gift shop, or visit the lobbies on the first floor. See App. 11–13, 27, 36–38. It appears that patients normally remain on the floors of the Hospital above the first floor, with visits to the first floor only by some patients and then only occasionally. *Id.*, at 20, 28, 35–36, 64. In fact, a patient must have special permission to leave the floor on which his room is located, as well as to take meals in the cafeteria. *Id.*, at 54, 64; 223 N. L. R. B., at 348. From this evidence, one may conclude reasonably that only those patients who are judged fit to withstand the activities of the public areas on the first floor are allowed to visit those parts of the Hospital. Moreover, both Victory and Ricketson testified that at least some kinds of solicitation in public areas such as the cafeteria would be unlikely to have a significant adverse impact on patients or patient care. App. 10, 31–32, 62. It thus appears that there was substantial evidence in the record to support the Board's conclusion that the Hospital had not justified the

---

[15] The courts of appeals are required to review the substantiality of evidence to support the Board's findings "on the record *considered as a whole*," 29 U. S. C. § 160 (e) (emphasis added). Here, it appears that the Court of Appeals failed to give appropriate weight to the evidence favorable to the Board regarding the cafeteria, gift shop, and lobbies.

prohibition of union solicitation in the cafeteria, gift shop, and lobbies on the first floor of the Hospital.

## IV

In addition to reviewing the sufficiency of the evidence in this case to support the Board's findings and order, the Court of Appeals also adopted a broader rationale for refusing to enforce the order. "In the setting of a modern general hospital," it stated, "it is difficult to define the areas of immediate patient care." 576 F. 2d, at 110. Since patients visit many parts of such a hospital during their treatment and convalescence, activities anywhere in the public areas of the hospital may well affect their recovery. Thus, the Court of Appeals concluded, in effect, that the Board's presumption that solicitation outside of immediate patient-care areas does not disrupt patient care or disturb patients is irrational, and that the Board should be required to prove that solicitation in any particular patient-access area will not interfere with patients' treatment or convalescence.

It is, of course, settled law that a presumption adopted and applied by the Board must rest on a sound factual connection between the proved and inferred facts. As the Court stated in *Republic Aviation Corp.* v. *NLRB*, 324 U. S. 793, 804–805 (1945), "[l]ike a statutory presumption or one established by regulation, the validity [of the Board's presumption regarding the permissibility of no-solicitation rules], perhaps in a varying degree, depends upon the rationality between what is proved and what is inferred." More recently, in *Beth Israel,* the Court again recognized that the courts have the duty to review the Board's presumptions both "for consistency with the Act, and for rationality." 437 U. S., at 501.

We do not share the apparent view of the Court of Appeals that the Board's presumption is irrational in all respects, since experience in cases such as *Beth Israel* and the present one makes clear that solicitation in at least some of the public

areas of hospitals often will not adversely affect patient care or disturb patients. The evidence of record in this case and other similar cases does, however, cast serious doubt on a presumption as to hospitals so sweeping that it embraces solicitation in the corridors and sitting rooms on floors occupied by patients. Since the 1974 amendments to the Act, each hospital making the attempt has overcome the effect of the Board's presumption as applied to such corridors and sitting rooms. The evidence by which the Hospital rebutted the presumption in the present case has been reviewed above. In *Baylor University Medical Center* v. *NLRB,* 188 U. S. App. D. C. 109, 578 F. 2d 351 (1978), vacated in part and remanded, 439 U. S. 9 (1978), the evidence demonstrating the need for the prohibition of solicitation in such areas was even more extensive.

> "The importance of preventing crowding and disruption in the hospital corridors cannot be seriously debated. Experienced witnesses testified of the extent to which congestion in the corridors impedes the operation of the medical staff and annoys patients and visitors. Quick and unimpeded passage through the hallways was shown to be imperative to the efficient operation of the hospital and to the success of certain of its emergency services, such as the cardiac arrest unit. The hallways serve not only as passageways for patients, visitors, doctors, and medicine, but also as viewing rooms for the nursery and storerooms for a variety of hospital equipment which must be available at a moment's notice. There was also testimony that a great deal of the physical therapy undertaken at [the hospital] actually took place in the corridors, and that for many departments the corridors served as the only available waiting room." 188 U. S. App. D. C., at 113–114, 578 F. 2d, at 355–356 (footnotes omitted).

After reviewing the record in *St. John's Hospital & School of Nursing, Inc.* v. *NLRB,* 557 F. 2d 1368 (CA10 1977), the court

there found that the Board's presumption (first adopted in that case) was unsupported by any evidence that solicitation in such areas would not adversely affect patient care. It concluded that to save the Board's presumption, "the Board's definition of 'strictly patient care areas' must be interpreted to include such areas as halls, stairways, elevators, and waiting rooms accessible to patients." *Id.*, at 1375.

Because the evidence presented by the Hospital in this case is sufficient to rebut the Board's presumption as applied to corridors and sitting rooms on patients' floors, we need not here decide the rationality of this portion of the Board's presumption, or undertake the task of framing the limits of an appropriate presumption regarding the permissibility of union solicitation in a modern hospital. Indeed, the development of such presumptions is normally the function of the Board. It must be said, however, that the experience to date raises serious doubts as to whether the Board's interpretation of its present presumption adequately takes into account the medical practices and methods of treatment incident to the delivery of patient-care services in a modern hospital.[16] In its con-

---

[16] The Board, in reviewing the scope and application of its presumption, should take into account that a modern hospital houses a complex array of facilities and techniques for patient care and therapy that defy simple classification. Patients not undergoing treatment at the moment are cared for in a variety of settings—recovery rooms, intensive-care units, patients' rooms, wards, sitting rooms, and even the corridors, where patients often are encouraged to walk, or to visit with their families. In different hospitals, the use and physical layout of such a variety of areas may require varying resolutions of questions about the validity of bans on union solicitation. In addition, outpatient clinics such as the Hospital's emergency room and "shortstay" unit, App. 28, 35, may raise special considerations because of the nature of the services rendered to patients there.

Some corridors in some hospitals, as well as elevators and stairways, may be used neither for treatment nor for care, but may be of great importance in the movement of patients (and emergency equipment) through the hospital. *Id.*, at 54; see *Baylor University Medical Center* v. *NLRB*, 188

tinuous review of the usefulness of its presumption, the Board should be mindful of the Court's admonition in *Beth Israel*.

" '[T]he Board [bears] a heavy continuing responsibility to review its policies concerning organizational activities in various parts of hospitals. Hospitals carry on a public function of the utmost seriousness and importance. They give rise to unique considerations that do not apply in the industrial settings with which the Board is more familiar. The Board should stand ready to revise its rulings if future experience demonstrates that the well-being of patients is in fact jeopardized.' " 437 U. S., at 508, quoting *NLRB* v. *Beth Israel Hospital*, 554 F. 2d, at 481.

## V

The Court of Appeals correctly concluded that the Board lacked substantial evidence in the record to support its order forbidding any prohibition on solicitation in the corridors and sitting rooms on floors of the Hospital housing either patients' rooms or operating and therapy rooms, and we affirm that portion of its judgment. The judgment of the Court of Appeals with respect to other parts of the Hospital is vacated, and the

---

U. S. App. D. C., at 113–114, 578 F. 2d, at 355–356. Still another group of areas, including cafeterias and gift shops, also may present difficult problems regarding the validity of no-solicitation rules. As MR. JUSTICE BLACKMUN noted in his opinion concurring in the judgment in *Beth Israel*, "[t]here are many hospital coffeeshops and cafeterias that are primarily patient and patient-relative oriented, despite the presence of employee patrons." 437 U. S., at 509.

In discharging its responsibility for administration of the Act, the Board must frame its rules and administer them with careful attention to the wide variety of activities within the modern hospital. The Union, and other labor organizations involved before the Board in cases similar to the present one, have adopted this view, urging the Board to abandon the simplistic "immediate patient care" criterion. See Brief for Intervenor 38–42.

case is remanded for further proceedings consistent with this opinion.

*So ordered.*

Mr. Justice Blackmun, concurring.

I join the Court's opinion and its judgment. I write only to underline what is plainly said in the opinion, *ante,* at 789–790, and n. 16, that these hospital cases so often turn on the proof presented. What may be true of one hospital's gift shop and cafeteria may not be true of another's. And I continue to have difficulty perceiving any rational distinction between the Board's recognition that solicitation is inappropriate in a department store, see *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483, 511–512, and nn. 2 and 3 (1978) (Powell, J., concurring in judgment); *id.,* at 508 (concurring opinion), and its contrary presumption with respect to the retail shop (usually operated on a not-for-profit basis) and cafeteria in the hospital. The admonition contained in the last paragraph of n. 16 of the Court's opinion, *ante,* at 790, cannot be overemphasized.

Mr. Chief Justice Burger, concurring in the judgment.

I concur only in the judgment because I do not agree with the basis of the Court's opinion. The Court accepts as valid the Board's presumption that hospital rules prohibiting solicitation during nonworking time outside of *"immediate* patient care areas" violate employees' right to organize. The Court denies enforcement to the Board's order in part on the ground that its finding that the Hospital failed to overcome this presumption was not supported by substantial evidence.

I would think no "evidence" is needed to establish the proposition that the primary mission of every hospital is care and concern for the patients and that anything which tends to interfere with that objective cannot be tolerated. A religious choir singing in a hospital chapel may well be desirable but if that interferes with patient care, it cannot be allowed.

To be supportable a presumption cannot rest on grounds which are irrational. *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483, 501 (1978). For me, it is wholly irrational for the Board to create a presumption that removes from the hospital absolute authority to control all activity in areas devoted primarily to patient care, including all areas frequented by patients. I would place the decision on the basis that: (1) the Board's presumption is wholly invalid as applied to areas of a hospital devoted primarily to the care of patients; (2) once the Board's order is deprived of the support of the presumption, it must be scrutinized to determine if it is supported by independent substantial evidence. That examination leads me to the conclusion that the Board's order is not supported by substantial evidence with respect to any of the patient-care areas or public areas above the first floor of the Hospital.

In short the Board's presumption is wholly invalid as applied to any area of the hospital devoted primarily to the care of patients for the reasons stated in MR. JUSTICE POWELL's opinion concurring in the judgment in *Beth Israel Hospital, supra,* at 510–514, which I joined. A hospital differs from a factory or industrial establishment. This is especially important in light of the Board's presumption against solicitation in the analogous public areas of restaurants and retail stores. *Id.,* at 511–513.

Nothing in *Beth Israel Hospital* is to the contrary. There the Court stressed the necessity for continuing development and possible revision of the Board's approach to hospital employees' activities. *Id.,* at 507–508. Moreover, MR. JUSTICE BRENNAN, speaking for the Court in that case, carefully explained that the particular cafeteria there was primarily an employee-service area, *id.,* at 506, not a patient-care facility.

The inquiry then properly turns to whether the Board's decision was supported by substantial evidence on the record as a whole. On the basis of the evidence described by the Court, *ante,* at 782–786, it seems clear to me that the decision

of the Board was not supported by substantial evidence with respect to public areas above the first floor of the Hospital. The fundamental issue in cases such as this is whether the employees' organizational rights affected by the hospital rules in question are superior to the hospital's needs in carrying out its mission.

The central "business" of a hospital is not a business in the sense that term is generally used in industrial contexts. The hospital's only purpose is the care and treatment of its patients, and I agree fully with the Court's statement that "[n]othing in the evidence before the Board provided any basis . . . for doubting the accuracy of the [testimony] that union solicitation in the presence or within the hearing of patients may have adverse effects on their recovery." *Ante,* at 784. The union's interest in membership solicitation in the public area of the Hospital above the first floor was severely undercut by the availability of abundant alternative areas for such union activity. Whatever doubts there may be as to the adverse effects on patients should be resolved in favor of their protection. I would not elevate the interests of unions or employees, whose highest duty is to patients, to a higher plane than that of the patients.

The evidence described by the Court, *ante,* at 786–787, demonstrates that the gift shop on the first floor is maintained primarily for the accommodation of visitors who wish to purchase articles for patients and is not a "patient-care" area; as in *Beth Israel, supra,* the first floor cafeteria is not a primarily patient-care area.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE WHITE and MR. JUSTICE MARSHALL join, concurring in the judgment.

In this case, the Court of Appeals for the Sixth Circuit found that respondent had demonstrated the special circumstances necessary to overcome the NLRB's presumption against bans on solicitation, and that there was no substantial

evidence to support the Board's holding to the contrary. The scope of our review of such a Court of Appeals finding is narrowly circumscribed:

> " 'Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied.' " *Beth Israel Hospital* v. *NLRB,* 437 U. S. 483, 507 (1978), quoting *Universal Camera Corp.* v. *NLRB,* 340 U. S. 474, 491 (1951).

Because I believe that the Court of Appeals "misapprehended or grossly misapplied" the substantial-evidence rule with respect to the cafeteria, gift shop, and first-floor lobbies of Baptist Hospital, but that the same cannot be said for the patient-floor corridors and sitting rooms, I concur in the judgment of the Court.

I

As the Court notes, "[t]he Hospital presented no clear evidence of the frequency with which patients use the cafeteria and gift shop, or visit the lobbies on the first floor," *ante,* at 786. See App. 11–13, 27, 36–38. In fact, the evidence demonstrated that patients normally remain on floors above the first floor, *id.,* at 20, 28, 35–36, 64; that they must have special permission to leave the floor on which their room is located, or to eat in the cafeteria, *id.,* at 64; *Baptist Hospital, Inc.,* 223 N. L. R. B. 344, 348 (1976); and that only a small number of patients actually use the cafeteria, App. 50, 64; 223 N. L. R. B., at 348. See generally, *ante,* at 786–787. Given such evidence, the Hospital could not have overcome the Board's presumption against solicitation bans in nonimmediate patient-care areas—that is, the Hospital could not have met its affirmative burden to demonstrate that the prohibition was "necessary to avoid disruption of health-care operations or

disturbance of patients," *Beth Israel Hospital* v. *NLRB, supra,* at 507. Since there clearly was substantial evidence to support the Board's determination that the presumption was not overcome, the Court of Appeals' holding to the contrary constituted a gross misapplication of the appropriate standard of review of Board findings.*

The same cannot be said of the Court of Appeals' holding with respect to those corridors and sitting rooms which adjoin, or are accessible to, the patient and treatment rooms on the upper floors. There was evidence that "[p]atients in the most critical and fragile conditions often move or are moved through these corridors, either en route to treatment in some other part of the Hospital or as part of their convalescence," *ante,* at 784. See App. 54, 64. Considerable additional evidence, including the testimony of two doctors, suggested that *in this hospital,* in these areas, a prohibition of solicitation was necessary to avoid disruption of health-care operations or disturbance of patients. See *ante,* at 782–784. This does not

---

*The Court of Appeals' misapplication of the standard of review of evidence may have been partially due to its misapprehension of the legal merits of the Board's presumption as applied to cafeterias. Although the court based its holding primarily upon a factual finding that the Hospital "did carry its burden in the present case" to establish the circumstances justifying a ban on solicitation, it also questioned the legal distinction which the Board makes between hospital cafeterias and public restaurants. See 576 F. 2d 107, 110 (1978). The Court of Appeals noted that the Board's insistence upon applying the presumption to the former, while not applying it to the latter, was rejected by the Court of Appeals for the District of Columbia Circuit in *Baylor University Medical Center* v. *NLRB,* 188 U. S. App. D. C. 109, 578 F. 2d 351 (1978).

Subsequent to the Court of Appeals decision below, we upheld the NLRB's distinction between public and hospital cafeterias, *Beth Israel Hospital* v. *NLRB,* 437 U. S., at 505–507, and vacated the decision of the Court of Appeals for the District of Columbia Circuit on that question. See *NLRB* v. *Baylor University Medical Center,* 439 U. S. 9 (1978). It may well be that had the court below had the benefit of our decision in *Beth Israel,* it might have viewed more favorably the Board's findings concerning Baptist Hospital's cafeteria.

mean that were this Court reviewing the evidence *de novo,* or even were it applying the standard of review appropriate for the Court of Appeals, it would have been inexorably driven to conclude that the presumption against no-solicitation rules was adequately overcome. But we do not sit as a court of first, or even second, instance. We cannot overturn the Court of Appeals' decision as to the substantiality of the evidence unless it misapprehended or grossly misapplied the appropriate standard of review. And given the evidence presented on the questions concerning the upper floors of the hospital, I cannot say that the appellate court so erred here.

## II

Both this opinion, and that of the Court, base their dispositions of the Board's petition upon the evidence presented in this case; neither rejects the legality of the presumption which the Board applied. See *ante,* at 789. In dicta, however, the Court questions the application of the presumption to the corridors and sitting rooms of floors occupied by patients. See *ante,* at 788–789. I do not share these sentiments.

"[T]he development of . . . presumptions is normally the function of the Board," *ante,* at 789, and its conclusions on such matters are traditionally accorded considerable deference. See *NLRB* v. *Iron Workers,* 434 U. S. 335, 350 (1978); *NLRB* v. *Weingarten, Inc.,* 420 U. S. 251, 266–267 (1975). *Beth Israel Hospital* v. *NLRB, supra,* at 500–501, made it clear that Board decisions in the health-care area are no exception to this rule. Although it is true that hospitals "give rise to unique considerations that do not apply in . . . industrial settings," and that the Board should therefore "stand ready to revise its rulings if future experience demonstrates that the well-being of patients is in fact jeopardized," *ante,* at 790, quoting *Beth Israel Hospital* v. *NLRB, supra,* at 508, it is also true that the Board has shown itself to be sensitive to the difference between the hospital and the industrial work-

place. Indeed, the very presumption at issue in this case reflects that sensitivity. As the Court itself notes:

> "Because its usual presumption that rules against solicitation on nonwork time are invalid gives too little weight to the need to avoid disruption of patient care and disturbance of patients in the hospital setting, the Board has indicated that it will not regard as presumptively invalid proscriptions on solicitation in immediate patient-care areas." *Ante,* at 778.

Judges, like most of the rest of the public, experience hospitals solely as patients. It is the Board, by contrast, which confronts every day the complexities of labor relations policy in the health-care area. And it is for that reason "that the 1974 amendments vested responsibility" in the Board "for developing that policy in the health-care industry." *Beth Israel Hospital* v. *NLRB,* 437 U. S., at 501. As we explained in *Beth Israel:*

> "Here, as in many other contexts of labor policy, '[t]he ultimate problem is the balancing of the conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.' . . . The judicial role is narrow: The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced." *Ibid.*

At this stage, I do not believe there is any warrant for second-guessing the Board's handling of its "difficult and delicate responsibility" in this sensitive area of labor-management relations.