No. 95-3352

Handicabs, Inc.,                    *
                                    *
                 Petitioner,        *
                                    *
         v.                         *
                                    *
National Labor Relations    *
Board,                              *
                                    *
                 Respondent.        *

--------------------------

Claudia Fuglie, individually        *
and o/b/o others    similarly       *
situated,                           *
                                    *
                 Amicus Curiae      *

                                        On Petition for Review
                                        from the National Labor
                                        Relations Board.

No. 95-3628

Handicabs, Inc.,                    *
                                    *
                 Respondent,        *
                                    *
         v.                         *
                                    *
National Labor Relations    *
Board,                              *
                                    *
                 Petitioner.        *

--------------------------

Claudia Fuglie, individually        *
and o/b/o others    similarly       *
situated,                           *
                                    *
                 Amicus Curiae      *

Submitted:  June 12, 1996

Filed:  September 11, 1996

Before BOWMAN, HEANEY, and BEAM, Circuit Judges.

HEANEY, Circuit Judge.

Handicabs, Inc. petitions for relief from an order of the National Labor Relations Board ("Board"), holding that Handicabs violated section 8(a)(1) and (3) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1) and (3) (1994) by (1) maintaining company policies prohibiting the discussion of work-related problems with other employees and clients and (2) discharging an employee because of his union activity.  The Board cross-petitions for enforcement of its order.  We deny Handicabs petition and enforce the order.

I.

Handicabs provides transportation services to disabled and elderly persons in the Minneapolis-St. Paul metropolitan area.  On September 20, 1994, Handicabs discharged one of its drivers, Ronald F. Trail, after receiving a complaint that he had been "talking about the union" with his passengers.  The complaint was made by Claudia Fuglie, a Handicabs employee and paying client; Fuglie, who suffers from spina bifida, is wheel-chair bound and dependent on the handicapped-accessible transit service.  Fuglie complained that the talk of unionization and potential work stoppage was distressing to her.

Handicabs fired Trail, allegedly for violating its rule prohibiting the discussion of company-related problems with

clients.  The policy, addendum no. 2 in the employee handbook, states in relevant part:

> Discussing complaints or problems about the company with our clients will be grounds for immediate dismissal.
>
> . . . .
>
> All of our clients are protected by the Vulnerable Adults Act.  According to this law, you must not tease them, take monies (other than ride-fare or tip) from them, curse or use profanity while in their presence, or do anything verbal or physical of a sexual nature.  Also, you must not put these people in a threatening or uncomfortable position by discussing any personal or company-related problems that may make them feel coerced or obligated to act upon or react to.

Petitioner's App. at 197 (emphasis added).  In addition, Handicabs maintained a company policy, addendum no. 1, that prohibited its employees from discussing their wages among themselves, violation of which was also grounds for immediate termination.  Id. at 199.

In response to his termination, Trail filed an unfair labor practice charge with the Board.  The Board issued a notice of hearing and complaint against Handicabs, which alleged that the company discharged Trail because of his union activity.[1]  The Board also contended that Handicabs' policy prohibiting employees from discussing employment concerns with clients violated section 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1) and (3), because it interfered with employees' rights to "self-organization, to form, join, or assist labor organizations . . . and . . . to engage in other concerted activities for the purpose of collective

---

[1]In mid-1994, Trail participated in an organizing campaign of the Handicabs drivers by Miscellaneous Drivers, Helpers & Warehousemen's Union, Local No. 638, I.B.T..  The campaign led to a representation election on October 14, 1994.  Trail signed a card authorizing the Union to represent him, passed out authorization cards, and was elected a member of one of the organizing committees.

bargaining," guaranteed under Section 7 of the Act, 29 U.S.C. § 157.

After a hearing, an Administrative Law Judge issued a decision in favor of the Board. The ALJ held, and Handicabs did not contest, that addendum no. 1, prohibiting the discussion of wages among employees, violated Section 8(a)(1) of the Act. The ALJ also determined that, while Handicabs has an obligation to protect its passengers from abuse and mistreatment, the policy against discussing work-related problems with passengers violated the Act because it was overly broad. Finally, the ALJ decided that because Trail's discharge was motivated by his union involvement and founded on an unlawful policy, it also was in violation of the Act. The ALJ recommended that Handicabs be ordered to rescind its workplace rules and reinstate Trail. After consideration of the parties' exceptions and briefs, the Board affirmed the ALJ's decision and recommended order. Handicabs now petitions for relief from this court.

II.

As a general rule, our standard of review affords great deference to the Board's affirmation of the ALJ's findings. See Wilson Trophy Co. v. N.L.R.B., 989 F.2d 1502, 1507 (8th Cir. 1993). We will enforce an order of the Board if the Board has correctly applied the law and its factual findings are supported by substantial evidence on the record considered as a whole, even though we might have reached a different decision had the matter been before us de novo. Id. Handicabs argues that the Board's findings are not supported by the record and that the decision demonstrates bias on the part of the ALJ against persons with disabilities. After careful examination of the record, we see no reason to upset the ALJ's factual characterizations and credibility determinations. In any event, we need not rely on the disputed facts to resolve this matter: The content of the policies and the

relevant facts surrounding Trail's discharge are undisputed.  We thus consider each of Handicabs' substantive arguments in turn.

Handicabs concedes that the blanket prohibition of wage discussion among employees contained in policy addendum no. 1 was in violation of the Act.  See Jeannette Corp. v. N.L.R.B., 552 F.2d 916, 919 (3d Cir. 1976) (an unqualified rule barring wage discussions among employees constitutes a violation); Waco, Inc., 273 N.L.R.B. 74, 118 L.R.R.M. 1163, 1166 (1984). Handicabs argues only that there is no need to enforce the portion of the Board's order that addresses this violation because the company unilaterally agreed to change the policy shortly after the hearing. Because Handicabs did not raise this defense before the Board, however, we may not consider it under section 10(e) of the Act, 29 U.S.C. § 160(e) (1994).  See Woelke & Romero Framing, Inc. v. N.L.R.B., 456 U.S. 645, 665-6 (1982).  Accordingly, we summarily enforce (affirm) the Board's order regarding addendum no. 1.

With respect to policy addendum no. 2, Handicabs vigorously contests the Board's determination that it violates the Act.  Handicabs asserts that the policy is designed to meet the special needs of its clients.  Handicabs argues that the Board's decision ignored the company's responsibility to protect the "enjoyment" of transportation as federally mandated by the Americans with Disabilities Act, 42 U.S.C. § 12203(b) (1994) ("ADA"), and to prevent harassment or abuse of its passengers as required by the Minnesota's Vulnerable Adults Act, Minn. Stat. § 626.557, sub. 2(d)(2) (1995).  Handicabs also contends that because its clients "are not necessarily able to handle stress or difficulty in the manner of a non-disabled person," Handicabs' Br. at 25, it should be permitted to enforce a more stringent no-solicitation rule to protect them, as the hospitals were permitted to do for its patients in N.L.R.B. v. Baptist Hospital, Inc., 442 U.S. 773 (1979) and Beth Israel Hospital v. N.L.R.B., 437 U.S. 483 (1978).  Finally, Handicabs argues that its policy, limited in time and

space to when drivers are transporting clients in the Handicabs vans, is analogous to the no-solicitation rules upheld by the Board for restaurants and retail stores see e.g., McDonald's Corp. and I.L.W.U. Local 142, 205 N.L.R.B. 404 (1973), and thus permissible under the Act.

Contrary to Handicabs' assertions, the Board recognized that Handicabs has a responsibility to protect persons with disabilities from harassment or harm. Neither the Board nor this court disputes the legitimacy or importance of this concern. The Board also agreed that some words and conduct cause greater distress for persons with disabilities than those without, thereby recognizing that there may be a need to prevent the discussion of topics that cause Handicabs' passengers harm. Yet, the Board stated that work rules intended to address these concerns must be narrowly tailored to avoid unnecessary deprivation of employees' statutory rights. Because Congress and the courts rely on the Board to strike the appropriate balance between such conflicting legitimate interests, we review the Board's decision with respect to whether Handicabs has violated the Act only for consistency and rationality. See Beth Israel Hospital, 437 U.S. at 501.

The Board determined that the company's policy was too broad. The first part of addendum no. 2 forbids all discussion of working conditions with clients even if the communication were intended to enlist their support for protected concerted activity. The Board also decided that the second part of the policy is too far-reaching because it conditions violation of its rule on the subjective reaction of the passengers--the discussion of company-related problems that "may make [passengers] feel coerced or obligated to act upon or react to." The subjective standard potentially prevents employees from discussing any aspect of a labor dispute and from appealing for support from the public for fear that a single client may feel threatened or uncomfortable. Neither part of the policy is limited in time or place, as Handicabs has argued;

rather the policy broadly prohibits all discussions with clients about company complaints.  As the Board concluded:

> So broad a prohibition hardly strikes a reasonable balance between protection which Congress sought to extend to the handicapped and challenged segment of the public and the rights which Congress sought to provide for employees under the Act, particularly in an overall prohibition which begins with an expressed warning of "immediate dismissal" for discussion with clients of "complaints or problems about the company[.]"

Petitioner's App. at 7.

The Board's discussion of the important interests in this case is well-reasoned and strikes an appropriate balance between Handicabs' responsibility to its passengers and the employees' rights under the Act. Thus, strictly reviewing the Board's decision under existing labor law, we defer to the Board's decision that policy addendum no. 2, as currently written, violates the Act because its prohibition of protected organizing activity is too extensive.

As a separate matter, we hold that the Board's decision under the Act does not violate or conflict with the ADA or the Minnesota Vulnerable Adults Act.  The Board's decision does not prevent or even discourage Handicabs from taking the appropriate steps to protect its passengers.  It simply informs the company that it cannot blatantly trample its employees' rights with a rule that speaks generally of protecting passengers yet targets only the discussion of company-related problems.  The Board's decision leaves open the opportunity for Handicabs to design a neutral rule that does not single out activity protected under the Act, but rather focuses on all speech and conduct that harms its passengers.  Handicabs' impermissible generalization about persons with disabilities--that all persons who ride handicapped-accessible, public transit services will be disturbed by talk of union activity--cannot bring its policy under the protection of the

disability laws.  Because the Board's decision does not violate or conflict with these laws, we also enforce the Board's order with respect to addendum no. 2.

Finally, Handicabs challenges the Board's ruling that the company violated section 8(a)(1) and (3) of the Act by discharging Trail. Handicabs asserts that it fired Trail because of his misconduct, not his union activity.  The Board listed many reasons to support its decision to the contrary.  First, while the company may not have been aware of Trail's union activities prior to the day they fired him, Fuglie's complaint apprised them of Trail's involvement.  Second, when Handicabs fired Trial, he was the only employee the company knew or suspected was involved in union organizing.  Third, Handicabs fired Trail shortly after they learned of this involvement and just twenty-four days before the union's representation election.  Finally, Handicabs did not provide Trail with an explanation for his discharge and did not give him any opportunity to respond to the allegations.  In fact, the company did not engage in any independent investigation of the charges; it relied solely on Fuglie's complaint.  Under these circumstances, we are unable to say that the Board's finding of unlawful discharge is not supported by substantial evidence.  Moreover, because policy addendum no. 2 is invalid and cannot be enforced, Handicabs' "lawful" justification for Trail's discharge under that rule lacks merit.  See Jeannette Corp., 532 F.2d at 920.  Accordingly, we enforce the Board's order requiring Handicabs to offer Trial immediate and full reinstatement, provide him with back pay and lost benefits with interest, and remove from its files any reference to the unlawful discharge.

III.

Based on the foregoing, we grant enforcement of the Board's order in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.