856 F.2d 378
 57 USLW 2175, 19 Envtl. L. Rep. 20,168
 The COMMONWEALTH OF MASSACHUSETTS, Petitioner,
v.
UNITED STATES of America, and United States Nuclear
Regulatory Commission, Respondents.
Public Service Company of New Hampshire, Scientists and
Engineers for Secure Energy, Inc., Long Island Lighting
Company, Nuclear Management and Resources Council, Inc., and
Edison Electric Institute, Intervenors.
UNION OF CONCERNED SCIENTISTS, et al., Petitioners,
v.
UNITED STATES REGULATORY COMMISSION and United States of
America, Respondents.
Public Service Company of New Hampshire, Nuclear Management
and Resources Council, Inc., Edison Electric Institute, Long
Island Lighting Company, Citizens Within the 10-Mile Radius,
Inc., and Scientists and Engineers for Secure Energy, Inc.,
Intervenors.
STATE OF NEW YORK, Mario Cuomo, Governor, and County of
Suffolk, Petitioners,
v.
UNITED STATES of America and United States Nuclear
Regulatory Commission, Respondents.
Public Service Company of New Hampshire, Nuclear Management
and Resources Council, Inc., Edison Electric Institute, Long
Island Lighting Company, and Scientists and Engineers for
Secure Energy, Inc., Intervenors.
 Nos. 87-2032, 87-2033, 88-1121.
 United States Court of Appeals,
First Circuit.
 Heard June 8, 1988.
Decided Sept. 6, 1988.
 
 James M. Shannon, Atty. Gen., with whom Stephen A. Jonas, Frank W. Ostrander and John Traficonte, Asst. Attys. Gen., Boston, Mass., were on brief, for petitioner Com. of Mass.
 Karla J. Letsche with whom Herbert H. Brown, Jonathan N. Eisenberg, Frederick W. Yette, Kirkpatrick & Lockhart, Washington, D.C., Robert Abrams, Atty. Gen., Alfred L. Nardelli, Asst. Atty. Gen., New York City, Fabian G. Palomino, Sp. Counsel to the Governor, Albany, N.Y., and E. Thomas Boyle, Suffolk Co. Atty., Stony Brook, N.Y., were on brief, for petitioners of New York State, Governor Mario M. Cuomo, and Suffolk County.
 Ellyn R. Weiss with whom Diane Curran, Andrea C. Ferster, Anne Spielberg, Dean R. Tousley and Harmon & Weiss, Washington, D.C., were on brief, for petitioners Union of Concerned Scientists, et al.
 Robert A. Backus and Backus, Meyer & Solomon, Manchester, N.H., on brief, for intervenor Citizens Within The 10-Mile Radius, Inc.
 William H. Briggs, Jr., Sol., with whom William C. Parler, Gen. Counsel, E. Leo Slaggie, Deputy Sol., Peter G. Crane, Counsel for Sp. Projects, Office of the Gen. Counsel, U.S. Nuclear Regulatory Com'n, Roger J. Marzulla, Asst. Atty. Gen., Anne S. Almy, Asst. Chief, Appellate Section, and John T. Stahr, Appellate Section, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., were on brief, for respondents.
 
 
 1
 Thomas G. Dignan, Jr., George H. Lewald, Deborah S. Steenland and Ropes & Gray, Boston, Mass., on brief, for intervenor Public Service Co. of New Hampshire.
 
 
 2
 James P. McGranery, Jr., Washington, D.C., on brief, for intervenor Scientists and Engineers for Secure Energy, Inc.
 
 
 3
 Donald P. Irwin, Lee B. Zeugin, Jessine A. Monaghan, Charles L. Ingebretson and Hunton & Williams, Richmond, Va., on brief, for intervenor Long Island Lighting Co.
 
 
 4
 Jay E. Silberg, Robert E. Zahler, Delissa A. Ridgway, Shaw, Pittman, Potts & Trowbridge, Robert W. Bishop, Gen. Counsel, Nuclear Management and Resources Council, Inc., Robert L. Baum, Sr. Vice President and Gen. Counsel, Edison Elec. Institute, Washington, D.C., on brief, for intervenors Nuclear Management and Resources Council, Inc., and Edison Elec. Institute.
 
 
 5
 Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and ACOSTA,* District Judge.
 
 
 6
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 7
 These consolidated petitions[1] are for review of a regulation promulgated by the Nuclear Regulatory Commission ("NRC"). The regulation provides standards by which the NRC, in deciding whether to license a utility to operate a nuclear power plant, evaluates a radiological emergency plan that is prepared by the utility alone because local governments have refused to participate in emergency planning. Petitioners specifically contest the rule's incorporation of what is known in NRC parlance as the "realism doctrine," a doctrine that allows the NRC, in evaluating a utility emergency plan, to make the following pair of presumptions: 1) in the event of an actual radiological emergency state local officials will do their best to protect the affected public, and 2) in such an emergency these officials will look to the utility plan for guidance and will generally follow that plan. Petitioners contend the rule is arbitrary and capricious, was promulgated under deficient "notice and comment" procedures, and is beyond the scope of the NRC's statutory authority.
 
 I.
 
 8
 Under the Atomic Energy Act of 1954, 42 U.S.C. Secs. 2011 et seq. (1982), the Nuclear Regulatory Commission is empowered to
 
 
 9
 prescribe such regulations or orders as it may deem necessary ... to govern any activity authorized pursuant to this chapter, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property....
 
 
 10
 Id. Sec. 2201(i)(3). Prior to the 1979 accident at the Three Mile Island nuclear power plant near Harrisburg, Pennsylvania, both Congress and the NRC had directed their regulatory efforts primarily at plant design. However, in response to the perceived inadequacy of prior planning and coordination between the utility and local governments during the Three Mile Island accident, Congress included in the NRC's 1980 authorization legislation new provisions aimed to ensure that "offsite" emergency planning was taken into consideration as well. The relevant part of the 1980 authorization legislation provided as follows:
 
 
 11
 (a) Funds authorized to be appropriated pursuant to this Act may be used by the Nuclear Regulatory Commission to conduct proceedings, and take other actions, with respect to the issuance of an operating license for a utilization facility only if the Commission determines that--
 
 
 12
 (1) there exists a State or local emergency plan which--
 
 
 13
 (A) provides for responding to accidents at the facility concerned, and(B) as it applies to the facility concerned only, complies with the Commission's guidelines for such plans, or
 
 
 14
 (2) in the absence of a plan which satisfies the requirements of paragraph (1), there exists a State, local, or utility plan which provides reasonable assurance that public health and safety is not endangered by operation of the facility concerned.
 
 
 15
 Pub.L. No. 96-295, Sec. 109(a)(1), 94 Stat. 780 (1980). The disjunctive language in subsection (2)--"State, local or utility plan "--indicates that this legislation did not condition the issuance of a license exclusively upon the existence of a state or local emergency plan. Rather, the statute's emergency planning requirements may be satisfied by either 1) a state or local plan complying with NRC guidelines or 2) a state, local, or utility plan that provides "reasonable assurance that public health and safety is not endangered."
 
 
 16
 After the accident at Three Mile Island, but prior to the 1980 authorization legislation, the NRC began revising its own emergency planning requirements. Its final emergency planning rule was promulgated in August 1980, just a few weeks after Congress had passed the authorization legislation. The NRC rule provided generally, in its initial paragraph, that "no operating license for a nuclear power reactor will be issued unless a finding is made by NRC that there is reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency." 10 C.F.R. Sec. 50.47(a)(1) (1980). Paragraph (b) of the regulation, along with Appendix E, provided specific substantive standards for emergency response plans. Under subsection (c), however, a licensing applicant's failure to meet paragraph (b)'s standards was not necessarily fatal: an applicant could still demonstrate to the Commission that certain deficiencies were not significant for the plant in question, that interim compensating actions had already been taken or were imminent, or that there were other "compelling reasons" to permit plant operation. The rule did not specifically discuss or refer to emergency plans that were prepared by a utility without input from state or local governments.
 
 
 17
 The 1980 rule remained unchanged until the 1987 amendment here in issue. Two developments occurred in the meantime, however, that are worthy of note. First, in two authorization acts subsequent to the 1980 authorization act discussed above, Congress reaffirmed that a plant could be licensed by the NRC on the basis of a "State, local, or utility plan which provides reasonable assurance that public health and safety is not endangered by operation of the facility concerned." Pub.L. No. 97-415, 96 Stat. 2067, Sec. 5 (1982-83 Authorization Act); Pub.L. No. 98-553, 98 Stat. 2825, Sec. 108 (1984-85 Authorization Act). These are the only post-1980 authorization acts. Second, in a 1986 adjudicatory ruling, Long Island Lighting Co. (Shoreham Nuclear Power Station, Unit 1), CLI-86-13, 24 NRC 22 (1986), the NRC explained how its 1980 rule would apply in evaluating the adequacy of a utility emergency plan. The question then before the NRC was whether the Long Island Lighting Company's emergency plan for its Shoreham Nuclear Power Plant was inadequate as a matter of law because of the refusal of Suffolk County and New York State to participate in the planning. Noting that it was legally obligated to consider whether a utility plan prepared without government cooperation could pass muster, the Commission stated that such a plan might be adequate under 10 C.F.R. Sec. 50.47(c), see supra, notwithstanding its inability to comply with the specific standards of paragraph (b), which are premised upon a high level of utility-government cooperation. Id. at 29. The Commission stated that the "root question" under paragraph (c) was identical to the question posed by the "fundamental licensing standard of Sec. 50.47(a)," namely, whether "there is reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency." In its decision, the Commission also put forth what has become known as the "realism doctrine":
 
 
 18
 [I]f Shoreham were to go into operation and there were to be a serious accident requiring consideration of protective actions for the public, the State and County officials would be obligated to assist, both as a matter of law and as a matter of discharging their public trust. Thus, in evaluating the LILCO plan we believe that we can reasonably assume some "best effort" State and County response in the event of an accident. We also believe that their "best effort" would utilize the LILCO plan as the best source for emergency planning information and options. After all, when faced with a serious accident, the State and County must recognize that the LILCO plan is clearly superior to no plan at all.
 
 
 19
 Id. at 31 (citations omitted).
 
 
 20
 Against this backdrop, the NRC promulgated the regulation in dispute here, amending paragraph (c) of the 1980 rule. See supra. The current rule reads in relevant part as follows:
 
 
 21
 In making its determination on the adequacy of a utility plan, the NRC will recognize the reality that in an actual emergency, state and local government officials will exercise their best efforts to protect the health and safety of the public. The NRC will determine the adequacy of that expected response, in combination with the utility's compensating measures, on a case-by-case basis, subject to the following guidance. In addressing the circumstance where applicant's inability to comply with the requirements of paragraph (b) of this section is wholly or substantially the result of non-participation of state and/or local governments, it may be presumed that in the event of an actual radiological emergency state and local officials would generally follow the utility plan. However, this presumption may be rebutted by, for example, a good faith and timely proffer of an adequate and feasible state and/or local radiological emergency plan that would in fact be relied upon in a radiological emergency.
 
 
 22
 10 C.F.R. Sec. 50.47(c)(iii)(B) (1988). In short, the amendment reflects the "realism doctrine" the NRC announced in the Long Island Lighting Co. adjudication, modified by an express provision that the doctrine's second presumption is rebuttable.
 
 II.
 
 23
 Petitioners contend as a threshold matter that the disputed rule is not entitled to the judicial deference normally owed agency action. See 5 U.S.C. Sec. 706(2)(A) (1982) (courts can set aside agency action only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). They argue that, for example, offsite emergency planning--as opposed to technical matters relating to plant construction and design--is outside the NRC's area of expertise. We do not agree. The substantive area in which an agency is deemed to be expert is determined by statute; here, under the relevant congressional enactments, see supra, the NRC is specifically authorized and directed to determine whether emergency plans adequately protect the public. See Duke Power Co. v. United States Nuclear Regulatory Commission, 770 F.2d 386, 390 (4th Cir.1985). We also reject petitioners' argument that the NRC is owed no deference because the issue in this case is a "pure question of statutory construction." The issue is not a pure question of statutory construction. Petitioners do not ask us "purely" to construe a statute; they ask us to hold that, given the statutes, the agency has acted unreasonably. Even if we were to assume, for the sake of argument, that the issue were purely one of statutory construction, petitioners still have not directed us to any enactment in which Congress has clearly indicated a view of emergency planning that is at variance with the NRC rule or that forecloses the NRC's adoption of the approach here adopted. Without such an indication of contrary congressional intent, we should normally defer to the agency's reasonable construction of the statute it administers. Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984); Mayburg v. Secretary of Health and Human Services, 740 F.2d 100 (1st Cir.1984). As it is, our standard of review here is dictated by section 706(2)(A) of the Administrative Procedure Act, and we must uphold the agency's action so long as it is "reasonable and defensible." Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97 & n. 7, 104 S.Ct. 439, 444 & n. 7, 78 L.Ed.2d 195 (1983).
 
 
 24
 Petitioners advance a host of arguments why the NRC rule--specifically, its incorporation of the second presumption contained in the "realism doctrine"--is unreasonable. Petitioners' primary contention is that it is unreasonable for the NRC to presume that, in the event of an actual radiological emergency, states and localities that have previously refused to participate in emergency planning will follow an emergency plan adopted by the utility.[2] We cannot say that this presumption is unreasonable. That state and local governments have refused to participate in emergency planning, or have indicated a belief that such planning is inherently impossible in a particular plant location, does not indicate how these governments would respond in an actual emergency. It is hardly unreasonable for the NRC to predict that state and local governments, notwithstanding their misgivings about the adequacy of a utility plan or their opposition to a particular plant location, would, in the event of an actual emergency at a plant they were lawfully obligated to coexist with, follow the only existing emergency plan. This prediction is supported by common sense, and also by the uncontested fact--part of the administrative record of this rule--that state and local governments prefer a planned emergency response to an ad hoc response. See 52 Fed.Reg. 42,082 (1987).
 
 
 25
 Nor is the NRC rule objectionable because it is a "presumption." Agencies are permitted to adopt and apply presumptions if the proven facts and the inferred facts are rationally connected. NLRB v. Baptist Hospital, Inc., 442 U.S. 773, 787, 99 S.Ct. 2598, 2606, 61 L.Ed.2d 251 (1979). As we indicated above, the inferred fact of state and local adherence to a utility plan is rationally related to the proven (in this case, hypothesized) fact of an actual radiological emergency. Moreover, the presumption here is expressly made rebuttable:
 
 
 26
 It may be presumed that in the event of an actual radiological emergency state and local officials would generally follow the utility plan. However, this presumption may be rebutted by, for example, a good faith and timely proffer of an adequate and feasible state and/or local radiological emergency plan that would in fact be relied upon in an emergency.
 
 
 27
 10 C.F.R. Sec. 50.47(c)(iii)(B). The proffer of an adequate state or local plan--an option that some states and localities may have expressly rejected--is only one possible method of rebutting the presumption. Nothing in the rule's language precludes other means of rebuttal.
 
 
 28
 Petitioners also contend that the amended rule reflects an impermissible deviation from the NRC's regulatory position in 1980. Assuming, without deciding, that the NRC has in fact changed its position with respect to the role of states and localities in emergency planning, we conclude that such a change was not irrational. The NRC might reasonably have believed that, in light of the proven nonparticipation of states in emergency planning subsequent to 1980, the new rule was necessary to serve Congress's policy that the NRC consider plans prepared by utilities without governmental participation. See Atchison, Topeka & Santa Fe Ry. v. Wichita Board of Trade, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973) (agency may alter policy in light of changed circumstances in order to serve congressional policy). There is adequate on-the-record justification for the NRC's adoption of the new rule. See NAACP v. FCC, 682 F.2d 993, 998 (D.C.Cir.1982) (deference is owed to an agency's determination that circumstances have changed and to the agency's response thereto).
 
 
 29
 Another of petitioners' contentions is that the NRC failed to comply with the notice and comment procedures required under section 553 of the Administrative Procedure Act, 5 U.S.C. Sec. 553 (1982). They contend the NRC's notice of proposed rulemaking failed to address the realism doctrine. Petitioners ignore, inter alia, the following statement, which appeared in information accompanying the notice:
 
 
 30
 the Commission believes that State and local governments which have not cooperated in planning will carry out their traditional public health and safety roles and would therefore respond to an accident. It is reasonable to expect that this response would follow a comprehensive utility plan.
 
 
 31
 52 Fed.Reg. 6983 (col. 2). See also id. at 6980 (col. 1), 6986 (col. 1). This notice was satisfactory, see Natural Resources Defense Council v. EPA, 824 F.2d 1258, 1282-86 (1st Cir.1987); petitioners' argument is without merit.
 
 
 32
 Petitioners also contend on a miscellany of grounds that the NRC rule violates the Atomic Energy Act. For example, they claim the new rule permits the NRC to consider a utility's economic costs in determining whether a plan provides "adequate protection" to the public, a result arguably in conflict with the D.C. Circuit's decision in Union of Concerned Scientists v. NRC, 824 F.2d 108 (D.C.Cir.1987). But even if we were to think that that case controlled here, we do not believe the regulation necessarily opens the door to such economic considerations. Nothing on the rule's face suggests this, and such a motivation is specifically disclaimed by the NRC. 52 Fed.Reg. 42,083 (1987). Nor can we accept petitioners' claim that such an inference is warranted by the rule's provision that, in evaluating a utility plan, the NRC shall make due allowance for the possibility that state and/or local nonparticipation will make the utility plan's compliance with enumerated safety standards "infeasible." 10 C.F.R. Sec. 50.47(c)(iii)(A). Petitioners claim the word "infeasible" necessarily invites cost-benefit analysis. We reject this argument. A fair reading of this provision of the rule in context suggests that compliance would be "infeasible" simply because some of the specific safety standards clearly contemplate utility-government cooperation.
 
 
 33
 We have considered and rejected petitioners' other arguments about the rule's statutory invalidity. These arguments are unpersuasive either because they fail to acknowledge the discretion the Act itself vests in the Nuclear Regulatory Commission, see Public Service Co. of New Hampshire v. NRC, 582 F.2d 77, 82 (1st Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978), or because they attack an imagined unlawful application of the rule. The latter arguments are inappropriate here, where the rule is being challenged on its face. Our holding is, of course, limited to the question of whether the rule is invalid on its face; petitioners remain free to challenge the NRC's application of the rule in an individual case.
 
 
 34
 The petitions for review are denied.
 
 
 
 *
 Of the District of Puerto Rico, sitting by designation
 
 
 [1]
 Petitioners are the Commonwealth of Massachusetts (No. 87-2032), the State of New York (No. 88-1121), and the Union of Concerned Scientists ("UCS"), the New England Coalition on Nuclear Pollution, the Seacoast Anti-Pollution League, the town of Hampton, New Hampshire, the towns of Amesbury and Kensington, Massachusetts, and United States Representative Edward J. Markey (No. 87-2033). An organization called Citizens Within the 10-Mile Radius has intervened on behalf of petitioners. Five parties have intervened on behalf of respondent, the Nuclear Regulatory Commission: Public Service Company of New Hampshire, Long Island Lighting Company, Scientists and Engineers for Secure Energy, Inc., Nuclear Management and Resources Council, Inc., and Edison Electric Institute
 The arguments advanced by the various petitioners and intervenor-petitioners are substantially similar, as are those of the respondent and intervenor-respondents. For brevity's sake, we refer to the opponents in this case only as "petitioners" and "NRC."
 
 
 [2]
 None of the petitioners seriously contests the first presumption of the realism doctrine, the presumption that state and local governments will try to protect the public in an emergency. Petitioner UCS argues that the rule contains an implicit third assumption that states and localities have the resources necessary to comply with the utility plan in the event of an emergency. We do not consider this third presumption to be implicit in the realism doctrine, and to the extent that this part of UCS's argument is a challenge to "interim criteria" adopted by the NRC subsequent to the promulgation of the disputed rule, the issue is not properly before us