# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 1, 2017      Decided August 10, 2018

No. 16-1320

CAPITAL MEDICAL CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD AND COMMERCIAL WORKERS LOCAL 21,
INTERVENOR

———

Consolidated with 16-1369

———

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

———

*Charles P. Roberts III* argued the cause and filed the briefs for petitioner.

*Kellie J. Isbell*, Attorney, National Labor Relations Board, argued the cause for respondent. On the brief were *Richard F. Griffin*, *Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General

Counsel, *Elizabeth A. Heaney*, Supervisory Attorney, and *Heather S. Beard*, Attorney.

*Matthew J. Ginsburg* argued the cause for intervenor. With him on the brief was *James B. Coppess*.

Before: GARLAND, *Chief Judge*, and ROGERS and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: In this case, a small number of off-duty hospital employees, seeking to inform visitors to the facility about an ongoing labor dispute, peacefully distributed leaflets and held picket signs on hospital property next to an entrance. It is undisputed that the employees' distribution of leaflets was protected under the National Labor Relations Act. The question we face is whether the employees' holding of picket signs—without any chanting, marching, or obstructing of passage—necessarily took their conduct beyond the NLRA's protections. The hospital tried to stop the employees' stationary display of picket signs, believing that the employees had no right to engage in that conduct on the facility's premises.

The National Labor Relations Board disagreed. The Board examined the employees' form of picketing under a framework traditionally applied to assess off-duty employees' distribution of union literature on hospital property. That framework asks whether prohibiting the employees' conduct is necessary to avoid disrupting patient care. The Board concluded that, here, the hospital failed to make that showing with regard to the employees' holding of picket signs. As a result, the Board determined, the hospital had violated the employees' rights under the NLRA by attempting to bar their protected conduct.

We sustain the Board's interpretation of the NLRA as reasonable. In our view, the Board's approach permissibly balances employees' rights to organize against an employer's interests in controlling its property. And the Board was not compelled to adopt a categorical rule that picketing of any kind—including the stationary, nonobstructive holding of a picket sign at issue here—is necessarily more disruptive, and less entitled to the NLRA's protections, than distribution of union literature. We thus deny the hospital's petition for review and grant the Board's cross-application for enforcement.

I.

A.

Under Section 7 of the National Labor Relations Act, employees "have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 7's protections encompass the "rights to discuss organization and the terms and conditions of their employment, to criticize or complain about their employer or their conditions of employment, and to enlist the assistance of others in addressing employment matters." *Quicken Loans, Inc. v. NLRB*, 830 F.3d 542, 545 (D.C. Cir. 2016). Those rights include soliciting support not only from fellow employees but also from nonemployees such as customers and the general public. *E.g.*, *Stanford Hosp. & Clinics v. NLRB*, 325 F.3d 334, 343 (D.C. Cir. 2003). Employers commit an "unfair labor practice" in violation of the Act when they "interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. 29 U.S.C. § 158(a)(1).

When employees seek to exercise Section 7 rights on their employer's property, the employees' rights are balanced against the employer's property interests and management prerogatives. In administering that balance, the Board has adopted various presumptions. In *Republic Aviation Corp. v. NLRB*, the Supreme Court approved the Board's application of a presumption that an employer cannot prohibit off-duty employees' solicitation of union support on company property. 324 U.S. 793, 803 (1945). To overcome the presumption, an employer must present "evidence that special circumstances make" a prohibition on solicitation "necessary in order to maintain production or discipline." *Id*. at 803 n.10 (citation omitted); *see id.* at 803-04. The Board later applied the *Republic Aviation* presumption to the distribution of union literature on company property by off-duty employees. *Eastex, Inc. v. NLRB*, 437 U.S. 556, 572-74 & n.23 (1978).

The Board has also recognized that employer interests can vary based on the nature of the workplace. Of particular relevance, the Board has modified the *Republic Aviation* presumption in the hospital context to account for the importance of administering patient care without disturbance. In immediate patient-care areas, the Board does not consider a ban on employee solicitation of union support to be presumptively invalid. *See Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 495 (1978); *NLRB v. Baptist Hosp., Inc.*, 442 U.S. 773, 778 & n.8 (1979). But outside of immediate patient-care areas, such as in hospital lounges and cafeterias, a prohibition on employee solicitation of union support is presumptively invalid unless the hospital can demonstrate the need for the restriction "to avoid disruption of health-care operations or disturbance of patients." *Beth Israel Hosp.*, 437 U.S. at 507.

The *Republic Aviation* presumption, including its tailored application to hospitals, has been applied predominantly in the

contexts of oral solicitation of union support or distribution of union-related literature. In 2004, however, the Board applied the *Republic Aviation* presumption in a case involving both distribution of handbills and picketing on company property. *Town & Country Supermarkets*, 340 N.L.R.B. 1410 (2004). Because the employer had failed to demonstrate special circumstances justifying its ban on that activity, the Board held that the employer committed an unfair labor practice by attempting to bar the "employees from engaging in picketing and handbilling." *Id*. at 1414.

## B.

With that backdrop in mind, we turn to the dispute in this case. Petitioner Capital Medical Center is an acute-care hospital in Olympia, Washington. United Food and Commercial Workers (the Union) represents a unit of Capital's technical employees. Their collective bargaining agreement expired in September 2012. As of May 2013, the parties had yet to reach a new agreement.

On May 9, 2013, the Union notified Capital that it intended to engage in picketing and handbilling outside the hospital on May 20, to advocate for a new agreement before the next bargaining session. At 6:00 a.m. on May 20, 2013, twenty to twenty-five employees began picketing and chanting on the public sidewalks around the hospital. The picketing and handbilling activities continued throughout the day, with fifty to sixty employees picketing and handbilling on the public sidewalks in the afternoon. A few employees, with Capital's permission, went onto the hospital's property to hand out leaflets alongside two nonemergency entrances.

Around 4:00 p.m., two to four employees took leaflets and picket signs from the sidewalk and walked onto hospital

property. They stood next to a nonemergency entrance to the building while holding the signs, with some also handing out leaflets while holding the signs. The signs contained the messages "Respect Our Care" and "Fair Contract Now." Multiple hospital personnel told the employees that they could continue distributing leaflets but could not stand on hospital property with their picket signs. The employees, though, declined to leave.

Union representatives then met with Capital's labor relations counsel and human resources manager. The company's counsel informed the Union representatives that the picketing employees would face discipline if they remained on hospital property. The representatives maintained that the employees had a right to remain on hospital property with their picket signs. Capital's counsel then called the Union's attorney and threatened to discipline the employees or call the police. One picketing employee, concerned about potential discipline or arrest, returned to the sidewalk. Another employee took his picket sign and replaced him near the entrance.

At around 5:00 p.m., roughly an hour after the employees began holding picket signs on hospital property, a hospital security officer called the police. A police officer arrived, and informed Capital personnel that he could not remove the employees because they were not being disruptive or blocking the entry doors. The picketers opted to leave a short time later because their picketing was scheduled to end soon in any event (at 6:00 p.m.). Few people entered or exited the hospital during the time the employees held picket signs near the entrance, and there were no confrontations between the employees and anyone who came into or out of the hospital.

The Union filed a charge with the NLRB's regional director, alleging that Capital's reaction to the employees'

holding picket signs on hospital property unlawfully interfered with employees' exercise of their Section 7 rights. The Board issued a complaint, alleging that Capital's interference in the picketing violated the Act. In July 2014, an administrative law judge found that Capital had committed an unfair labor practice by telling employees they could not picket by the entrances, threatening disciplinary action, and calling the police.

On August 12, 2016, the Board affirmed the ALJ's findings and conclusions. *Capital Med. Ctr. & UFCW Local 21*, 364 N.L.R.B. No. 69, 2016 WL 4362367, at *1 (Aug. 12, 2016). The Board "assume[d] arguendo" that the employees' stationary holding of picket signs amounted to "picketing within the meaning of the Act." *Id.* at *1 n.4. The Board then assessed whether the presumption recognized in *Republic Aviation*, 324 U.S. 793, as tailored to the hospital context, *Beth Israel Hosp.*, 437 U.S. 483, applies to employee picketing just as it applies to employee handbilling and other protected Section 7 activity.

The Board decided that the *Republic Aviation* framework should govern in cases involving picketing on company property. That conclusion, the Board noted, found support in its prior decision in *Town & Country*, 340 N.L.R.B. at 1414, which had applied the *Republic Aviation* presumption to off-duty employee picketing on the employer's premises. The Board rejected the notion that picketing is inherently more disruptive than the other Section 7 activity covered by *Republic Aviation*, such that the presumption should be categorically inapplicable in the context of picketing.

Applying the modified *Republic Aviation* presumption that governs in the hospital context, the Board examined the employees' conduct at issue, which the Board described as "holding signs near a nonemergency entrance without any

patrolling, chanting or obstruction of the entrance." *Capital Med. Ctr.*, 2016 WL 4362367, at \*3 n.9. The Board agreed with the ALJ's finding that the employees' stationary, peaceful picketing was unlikely to interfere with patient care. Capital thus failed to meet its burden to show that it needed to bar the picketing to "prevent patient disturbance or disruption of health care operations." *Id.* at \*5. One Board member dissented, disagreeing with the Board's conclusion that the *Republic Aviation* presumption should apply to off-duty picketing on employer property.

Capital now petitions this court for review, and the Board cross-applies for enforcement of its order. 29 U.S.C. § 160(e)-(f). The Union has intervened in support of the Board's decision.

## II.

Capital principally challenges the Board's decision on the ground that the *Republic Aviation* framework should be inapplicable in the context of employee picketing on company property. We disagree. The Board permissibly declined to conclude that picketing inherently is so disruptive as to be categorically ineligible for protection under the *Republic Aviation* presumption. We also reject Capital's contention that, in applying the *Republic Aviation* framework, the Board should have found the picketing in this case sufficiently likely to disrupt patient care such that Capital could validly bar it.

## A.

We first address whether the Board could apply the *Republic Area* framework to employee picketing on company premises, or whether the Board instead was obligated to confine that framework to the exercise of Section 7 rights in

other ways such as orally soliciting support or distributing leaflets. In deciding to apply *Republic Aviation* to employee picketing, the Board construed the scope of Section 7's protections. We defer to the Board's reasonable interpretation of ambiguous NLRA provisions, as we generally do when an agency construes a statute it administers. *E.g.*, *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 999-1000 (D.C. Cir. 2001); *see Chevron U.S.A. Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837, 842-43 (1984). We sustain the Board's application of the *Republic Aviation* framework here on that basis.

At the outset, it is undisputed that Section 7 does not directly resolve the rights of off-duty employees to picket on company property. *See ITT Indus.*, 251 F.3d at 1000 ("Section 7 does not itself speak of access rights[.]"). The Board's interpretation of those rights, then, would ordinarily call for our deference if reasonable. But Capital contends that the Board's interpretation nonetheless is ineligible for deference because, Capital argues, the Board failed to balance the hospital's property rights against the employees' Section 7 rights, as it was required to do. *See id.* at 1005; *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956).

Capital's argument is misconceived. The Board accounted for (and balanced) the employer's property rights and management prerogatives by invoking the *Republic Aviation* framework. *See DHL Express, Inc. v. NLRB*, 813 F.3d 365, 376 (D.C. Cir. 2016). As the Board explained, "*Republic Aviation* itself explicitly required a balance between protection of employees' Section 7 rights and employers' property rights and business interests"; and the *Republic Aviation* framework gives effect to an employer's interests in the hospital setting on a case-by-case basis by enabling a hospital to "prohibit Section 7 activities in non-patient care areas if it shows that the prohibition  is needed to prevent patient disturbance or

disruption of health care operations." *Capital Med. Ctr.*, 2016 WL 4362367, at \*4; *see also id.* at \*4 nn.10-11.

We therefore must sustain the Board's interpretation if it is reasonable. Capital advances two strands of arguments in contending that the Board could not permissibly apply the *Republic Aviation* presumption to employee picketing on company property. First, Capital asserts that picketing of any kind is inherently more disruptive than other forms of Section 7 activity. Second, Capital submits the Board did not adequately explain its departure from agency precedents under which an employer could bar picketing on its property if there were reasonable alternative means of communication available to the employees. We find Capital's arguments unpersuasive, and we sustain the Board's approach as reasonable.

1.

There is no dispute that the tailored *Republic Aviation* presumption protects off-duty employees' distribution of union literature on hospital property in non-patient care areas (unless the hospital can show it needs to bar the conduct to avoid disrupting health care operations). Capital therefore did not attempt to stop its employees from handing out leaflets outside the entrance to its facility. Is employee picketing categorically different, such that the *Republic Aviation* framework should have no application to picketing as a blanket matter?

The Board permissibly answered that question no. The Board explained that "[t]here is nothing in the nature of picketing per se that would support a conclusion that *Republic Aviation* is inapplicable to that activity." *Capital Med. Ctr.*, 2016 WL 4362367, at \*3 n.9. "In fact," the Board determined, "picketing is often neither coercive nor disruptive." *Id.* The Board said that it needed to "look no further for an example

than the peaceful display of picket signs . . . that occurred in this case." *Id.* "Indeed," the Board reasoned, "the quiet, stationary" picketing at issue "was even less confrontational than the permitted handbilling in an important respect: it involved no direct contact with the recipient of the handbill." *Id.* at *5 n.14. And whereas the employees "stationed themselves outside the main pathways to the doors," they "only stepped into the entryway . . . when handbilling," not when they merely held picket signs. *Id.* at *4 n.13.

The Board's interpretation of Section 7, so as to apply the same framework to picketing as to other protected employee conduct, is reasonable. In contending otherwise, Capital relies on the Supreme Court's observation that "picketing is qualitatively different from other forms of communication." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 580 (1988). The Board, though, addressed that observation directly, explaining that the Court "did not state that [picketing] is necessarily or inherently 'coercive' or 'disruptive.'" *Capital Med. Ctr.*, 2016 WL 4362367, at *3 n.9. And the Court in *DeBartolo*, when referring to "picketing," appeared to have in mind "those patrolling a picket line," 485 U.S. at 580, as opposed to the stationary holding of picket signs by two to four employees without any patrolling (or even chanting), at issue here.

The Board, moreover, specifically rejected any notion that it was "holding that on-premises picketing must be permitted to the same degree as on-premises solicitation and handbilling." *Capital Med. Ctr.*, 2016 WL 4362367, at *3 n.9 (internal quotation marks omitted). Rather, the Board could "easily envision circumstances, not present here, where picketing on hospital property would disrupt operations or interfere with patient care while solicitation and distribution would not." *Id.* The *Republic Aviation* framework would

enable a hospital to bar picketing in those situations. *Id.* And the Board presumably will develop principles on a case-by-case basis that will guide employers about the circumstances in which they can prohibit picketing on company premises. It also bears recalling that the *Republic Aviation* framework's presumption applies only in "non-patient care areas." *Id.* at \*4. In patient-care areas, a hospital is generally free to prohibit Section 7 activity including any holding of picket signs. *See Stanford Hosp.*, 325 F.3d at 338-39.

Capital argues that the Board erred in relying on its previous decision in *Town & Country Supermarkets*, which, in Capital's view, was inadequately reasoned and materially distinguishable in its treatment of picketing. The Board, though, invoked *Town & Country Supermarkets* here primarily (and correctly) to show that it had previously applied the *Republic Aviation* framework to picketing by off-duty employees on company property. *Id.* at \*3. The Board hardly relied solely on *Town & Country Supermarket* to justify its decision to apply *Republic Aviation* in the context of this case. Rather, as discussed, the Board separately set out why it would be appropriate to bring employee picketing within that framework—including by reasoning that picketing can be noncoercive and nondisruptive, as the Board found was true of the peaceful, stationary holding of picket signs in this case.

Finally, Capital argues that the Board erred in relying on Section 8(g) of the NLRA. That provision requires employees of health care facilities to provide 10-days' advance notice before engaging in picketing or striking. 29 U.S.C. § 158(g). The Board invoked Section 8(g) to demonstrate that Congress contemplated the picketing of health care facilities by employees, and Congress allowed for picketing of hospitals without excluding picketing on hospital property. *Capital*

*Med. Ctr.*, 2016 WL 4362367, at \*3 n.9.  Capital emphasizes that Section 8(g) does not speak to whether picketing of hospitals necessarily would occur on a hospital's private grounds.  The Board understood as much, but permissibly relied on Section 8(g) to support the general idea that picketing of hospitals need not be subjected to different standards than other Section 7 activity.

In short, the Board reasonably interpreted Section 7 in concluding that the *Republic Aviation* presumption could encompass not only solicitation and distribution on employer property, but also picketing.

2.

Capital next contends that the Board applied the *Republic Aviation* framework without accounting for and sufficiently explaining its departure from its prior precedents.  "[A]n unexplained divergence from its precedent would render a Board decision arbitrary and capricious."  *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1074 (D.C. Cir. 2016).  The Board, though, gave an adequate explanation here.

Capital points primarily to the Board's decision in *Providence Hospital*, 285 N.L.R.B. 320 (1987).  There, a hospital prohibited off-duty employees from engaging in informational picketing on hospital property.  In administering the balance "between property rights and Section 7 rights," the Board applied its then-applicable *Fairmont Hotel* test.  *Id*. at 321 (citing *Fairmont Hotel*, 282 N.L.R.B. 139 (1986)).  That test addressed whether an employer must allow access to its property for the exercise of Section 7 rights by off-duty employees or nonemployee union organizers.  Under the test, if the employer's property interests and the off-duty employees' (or nonemployee organizers') Section 7 interests

were relatively equal in weight, the Board considered whether there was a "reasonable alternative means for communicating with [the] intended audience." *Id*. at 322. Applying that inquiry in *Providence Hospital*, the Board upheld the hospital's ban on picketing on its property, concluding that the employees could effectively communicate with the public by engaging in informational picketing on adjacent public property. *Id.*

The Board subsequently determined that the availability of "reasonable alternative means" would be relevant in every case involving access to company property for exercising Section 7 rights, not just cases in which the competing interests were roughly equal in strength. *See Jean Country*, 291 N.L.R.B. 11, 11 (1988). The Supreme Court then invalidated the *Jean Country* framework's balancing of interests, "[a]t least as applied to nonemployees." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 538 (1992). The Court held that, under its precedents, nonemployee union organizers had no cognizable interest in accessing the employer's premises as long as they had reasonable access to employees elsewhere. *Id.* at 537-38. The Court did not directly speak to whether the *Jean Country* framework—including the consideration of "reasonable alternative means"—continued to govern in cases involving off-duty employees.

Capital argues that the Board was obligated by its precedents to continue considering the availability of reasonable alternative means in cases involving off-duty employees, unless it adequately explained why it would no longer do so. The Board, however, adequately accounted for its precedents in its decision. It specifically referenced *Providence Hospital*, explaining that the decision no longer governed "[f]or the reasons set forth by the [administrative law] judge." *Capital Med. Ctr.*, 2016 WL 4362367, at \*4 n.12. And the ALJ in turn thoroughly explained her decision not to

apply the *Providence Hospital/Jean Country* line of decisions—and instead to apply the *Republic Aviation* framework—in the circumstances of this case.

The ALJ acknowledged that the "case that weighs most strongly in [Capital's] favor is *Providence Hospital*." *Capital Med. Ctr. & UFCW Local 21*, ALJ Decision, 2014 WL 3548159, at 10 (July 17, 2014) (J.A. 359). But the *Providence Hospital/Jean Country* line of decisions, the ALJ observed, had been rejected by the Supreme Court as applied to nonemployees. *Id.* at 8, 10-11 (J.A. 357, 359-60). And the Board had since "declined to apply the *Jean Country* test to cases involving off-duty employee access to the work premises." *Id.* at 8 (J.A. 357). Rather, the Board's decisions had evolved to draw distinctions based on certain "primary considerations," one of which the ALJ found especially salient here: whether the circumstances involved a blanket prohibition against off-duty employees accessing company property, or instead involved selective permission for off-duty employees to come onto the premises for some purposes but not to engage in certain forms of Section 7 activity. *Id.* at 8, 10-11 (J.A. 357, 359-60).

This case falls into the latter category, the ALJ explained. It "does not involve a no-access rule or policy." *Id.* at 8 (J.A. 357). Instead, "off-duty employees were permitted to be on the Hospital's premises . . . so long as they did not carry picket signs." *Id.*; *see id.* at 11 (J.A. 360). In that setting, the ALJ determined, the *Republic Aviation* framework, rather than the *Providence Hospital/Jean Country* line of decisions, was controlling. *Id.* at 8, 11 (J.A. 357, 360).

The Board expressly incorporated the ALJ's reasoning. *Capital Med. Ctr.*, 2016 WL 4362367, at *4 n.12. The Board thus determined that, "consistent with . . . [its] treatment of

other Sec. 7 activity in a hospital setting, it is appropriate to place on the employer the burden of showing a likelihood of disturbance or disruption in a particular case." *Id.* The Board adequately explained why it adopted that approach rather than the one set out in *Providence Hospital/Jean Country*, including by adopting the ALJ's reasoning on the issue.

## B.

Capital briefly challenges the Board's finding that, under the *Republic Aviation* framework, the informational picketing at issue here was unlikely to disrupt health operations or cause patient disturbance. We assess whether the Board's finding in that regard is supported by substantial evidence, *Brockton Hosp. v. NLRB*, 294 F.3d 100, 104 (D.C. Cir. 2002), and conclude that it is.

In order to overcome the *Republic Aviation* presumption, "the Hospital had to show only a likelihood of, not actual, disruption or disturbance." *Id.* Capital asserts that the Board impermissibly required it to show an actual disruption rather than the likelihood of a disruption. The Board, however, examined whether Capital had adduced evidence of "any *potential* disruption" and the "*likely* impact" of the picketing. *Capital Med. Ctr.*, 2016 WL 4362367, at *4 (emphases added). Capital failed to rebut the presumption, not because it was made to prove an actual disruption, but because its allegation of a "potential disruption" was based on "speculative and exaggerated contentions" that were "not supported by the record." *Id*. at *4-5.

The Board's finding that Capital had failed to demonstrate a likelihood of patient disturbance or disruption of health care operations is supported by substantial evidence. Undisputed record evidence establishes that there were only two to four

employees who held picket signs on the hospital's property, standing stationary by a nonemergency entrance. They did not chant, march, or obstruct visitors from entering or leaving the hospital, and Capital offered no evidence demonstrating that the peaceful holding of picket signs nonetheless could disrupt patient care. We therefore uphold the Board's finding that the picketing at issue here presented no likelihood of disruption or disturbance, and we sustain the Board's resulting conclusion that Capital violated the NLRA by attempting to stop the employees from holding picket signs.

\* \* \* \* \*

For the foregoing reasons, we deny the petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*